IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
February 24, 2004 Session

## HARRISON PEARISON v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Hamilton County**
**No. 235756     Douglas A. Meyer, Judge**

_____

**No. E2003-02158-CCA-R3-CD - Filed July 7, 2004**

_____

The petitioner, Harrison Pearison, appeals the denial of his petition for post-conviction relief. In this appeal, he asserts that he was denied the effective assistance of counsel. The judgment of the post-conviction court is affirmed.

**Tenn. R. App. P. 3; Judgment of the Trial Court Affirmed**

GARY R. WADE, P.J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ALAN E. GLENN, JJ., joined.

Daniel J. Ripper, Chattanooga, Tennessee, for the appellant, Harrison Pearison.

Paul G. Summers, Attorney General & Reporter; Renee W. Turner, Assistant Attorney General; and Mary Sullivan Moore, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

On November 3, 1997, the petitioner, originally charged with four counts of attempted first degree murder and one count of aggravated arson, was convicted of aggravated arson, a Class A felony, see Tenn. Code Ann. § 39-14-303(a)(1), and acquitted of the other charges. The trial court imposed a Range I sentence of twenty years. This court affirmed on direct appeal. See State v. Harrison Pearson, No. 03C01-9802-CR-00076 (Tenn. Crim. App., at Knoxville, Aug. 31, 1999). Our supreme court denied permission to appeal on March 13, 2000.[1]

The petitioner's conviction related to a fire at the residence he had shared with his ex-wife before their divorce. Id., slip op. at 2-3. Floyd Polk, a friend of the petitioner who lived in the neighborhood, testified that the petitioner visited him twice on the night of the fire. Id. During the first visit, the two men drank whiskey and the petitioner complained about his pending divorce. Id.

_____

[1]There is a variance in the spelling of the petitioner's surname in the direct appeal and the petition for post-conviction relief. The case numbers, however, coincide.

The petitioner left Polk's residence and then returned after midnight, smelling of gasoline and carrying a gallon jug of the substance. Id. Meanwhile, the petitioner's ex-wife and daughter awoke to find two separate fires burning at the residence, one at the back door and one at the front door. Id., slip op. at 3-4. Both recalled that the petitioner had threatened on a previous occasion to burn the house. Id. The family dog, which rarely left the yard, was found at the petitioner's mother's house after the fire. Id. When interviewed shortly after the fire, the petitioner appeared intoxicated and his hands smelled strongly of bleach. Id., slip op. at 5.

The petitioner testified that after leaving Polk's house, he walked to his ex-wife's residence and asked her to drive him to his mother's house. She agreed and when he arrived at his mother's house, he noticed that he had paint on his hands from a job he had worked earlier in the day. After getting money from his mother, the petitioner walked to a nearby gas station. On his way, he encountered an individual whose car would not start because it was out of gas. The petitioner purchased gas at the station and helped the individual start his car before walking back to Polk's residence. From there, the petitioner went back to his mother's house and went to sleep. He contended that the smell of bleach was on his shoes, which had been "contaminated" while he was at work. He denied setting fire to the house and speculated that the fire was related to the drug activity of the victim's sons.

The petitioner filed a timely petition for post-conviction relief, alleging, among other things, that his trial counsel was ineffective. The post-conviction court appointed counsel and the petition was amended.

At the evidentiary hearing on the petition for post-conviction relief, the petitioner's trial counsel, Assistant Public Defender Karla Gothard, testified that the petitioner had maintained his innocence from the outset of the case and had indicated that he would not accept any plea offer from the state. While trial counsel did not recall the state's having offered to dismiss the attempted first degree murder charges in exchange for a plea of guilty to the misdemeanor offense of reckless burning, she did contend that it had always been her practice to relay every plea offer to her clients and "tell them what I think about it." She nevertheless insisted that the petitioner had adamantly refused to consider a plea of guilt "to anything." Trial counsel also observed that if the state had indeed made such an offer, she would have advised the petitioner that it would be "foolish not to take such a plea offer looking at the potential liability in [the case]."

Trial counsel testified that the petitioner had contended that the house had been burned by a rival gang of the sons of his ex-wife as part of a turf war in the illicit drug trade. Trial counsel insisted, however, that she investigated the petitioner's claims but was unable to find any witnesses to support his contentions. Trial counsel also remembered that her efforts to corroborate the petitioner's alibi, that he had been working on someone's car on the evening of the fire, were also unsuccessful.

Trial counsel testified that the petitioner had asked her to introduce evidence that the victim had lived with him as a wife for over twenty years while she was legally married to another

individual. It was trial counsel's opinion, however, that any evidence of a bigamous marriage was irrelevant and would "look equally bad on [the petitioner] as it would . . . on her." Trial counsel also remembered that the petitioner had asked her to impeach the victim's testimony with evidence regarding the "fraudulent conveyance" of their residence. According to trial counsel, she did not cross-examine on the subject because her investigation indicated that there had been no fraudulent conveyance.

During cross-examination, trial counsel acknowledged that on each occasion she had visited the petitioner prior to trial, he had given her a legal pad filled with notes about the case. She recalled that he wrote on every page front and back, to the edge of the page, and even on the cardboard pad. According to trial counsel, it was difficult to keep the petitioner focused on the elements of the crime because "he wanted to tell me that [the victim is] so stupid she thinks this, or [the victim is] so stupid she thinks that, and you need to bring this out in testimony." Trial counsel recalled that the petitioner was very angry at the victim and that "his attention was focused on [the victim], [the victim's] sons, and how he had . . . been done wrong by them."

Trial counsel testified that her investigator had interviewed each of the state's witnesses that was willing to cooperate. She recalled driving the routes the petitioner claimed to have traveled on the night of the fire and walking through the neighborhood as a part of her preparation for trial. Trial counsel had no recollection of receiving a plea offer of less than an eight-year sentence. She stated that the petitioner rejected the eight-year offer, explaining that "he didn't want to settle . . . . He wanted a trial, he wanted to be found not guilty, he wanted to be vindicated." Trial counsel insisted that she would have strongly recommended that the petitioner accept any misdemeanor plea offer, explaining, "I'm not in this business to try as many cases as I can; I'm in this business to zealously represent my client within the bounds of the law, and if they're given a plea offer that says you can walk out the door today, I would certainly go back and transmit that to my client."

Trial counsel also recalled that the petitioner insisted upon testifying at trial despite her advice to the contrary. She testified that the petitioner was not a good witness and that "some of the jurors after the trial was over came up to me and told me that they would have acquitted him on everything had he not taken the stand." Trial counsel remembered that after the trial was over, the petitioner left a message on her voice mail expressing his displeasure with her services but later sent her a long letter thanking her for her hard work.

John Millican, the Assistant District Attorney General who prosecuted the case against the petitioner, testified that shortly before the scheduled trial date, he offered to dismiss the attempted first degree murder charges in exchange for a plea of guilty to misdemeanor reckless burning, a lesser included offense of aggravated arson. He recalled that "based on the amount of time [the petitioner] had . . . already been in custody, he would have already built the time for the 11 months 29 day sentence" for reckless burning. According to Millican, he communicated the offer to trial counsel, who informed him that the petitioner "was not interested in pleading to anything at all and that he would go to trial, . . . either to have everything dismissed or he was going to go to trial." Millican recalled that the prosecution of the petitioner was his first jury trial and that he made the settlement

offer because there was some question "as to whether or not [the petitioner] actually intended to burn down the house . . . ." He testified that he was "shocked" when the petitioner did not accept the offer because "he could have gone home that day." It was his opinion that trial counsel was not ineffective and that she was "very prepared" for trial.

David Denny, an Assistant District Attorney who assisted Millican in the prosecution of the case, testified that he specifically recalled the misdemeanor plea offer because it was quite unusual for the state to offer to reduce such serious charges to the misdemeanor level. He stated that the offer was justified under the circumstances because the state was not sure that "there was enough proof to establish that the defendant seriously intended to set the structure on fire and thereby harm the individuals inside." Denny testified that he spoke with Alan Miller, a member of the defense team, on the day of the trial regarding the plea offer and learned that the petitioner was adamant about going to trial.

Rebecca Pearison Holloway, the petitioner's sister, testified that she once saw the victim's sons "cooking" crack cocaine over a fire in their bedroom. She stated that she also heard the victim agree to "make the sale" for one of her sons. According to Ms. Holloway, trial counsel did not ask her to testify on behalf of the petitioner at trial, explaining that her testimony was irrelevant.

Larry Crutcher, the petitioner's brother, testified that the petitioner was with him at a nightclub at the time the fire was started. He claimed that the petitioner could not have started the fire because they stayed at the club until it closed at approximately 3:00 a.m. During cross-examination, however, Crutcher conceded that he was unaware that his testimony was in direct conflict with the testimony that the petitioner had provided at trial. The petitioner had made no mention at trial of going to a club with Crutcher on the night of the fire.

The petitioner testified that the only plea offer he received called for an eight-year sentence. He insisted that he would have accepted the misdemeanor offer because he "had already been up there in the county jail more than the 11-29 if I done day for day. . . . [M]y mother was sick and dying . . . [and] I had a . . . $20-an-hour job that I wanted to try to get." The petitioner also claimed that he had informed trial counsel's investigator that he would accept a sentence of eleven months and twenty-nine days.

Eddie Jacks, who worked as an investigator for the Public Defender's Office at the time of the petitioner's trial, testified that he spoke with the petitioner about the offer of the misdemeanor sentence. He insisted that trial counsel had communicated the offer to the petitioner, who refused to accept even though it meant that he would be released from jail immediately. According to Jacks, the petitioner maintained his innocence and wanted a trial.

At the conclusion of the hearing, the post-conviction court concluded that trial counsel, despite her lack of recollection, had communicated the misdemeanor plea offer to the petitioner and that the petitioner had rejected it. The court also found that Jacks had communicated the misdemeanor offer to the petitioner and the petitioner had again refused to accept it. Before ruling,

the post-conviction court observed that even though the offer had been communicated to the petitioner and the petitioner turned it down, "it just doesn't seem right . . . for [the petitioner] to have to serve 20 years when he could have served 11 months 29 days," and expressed the desire "to find some way to grant him a new trial." Nevertheless, the post-conviction court ultimately chose to deny relief in its subsequent and extensive written memorandum and order, specifically concluding that the testimony of Ms. Holloway would not have been admissible at trial and that the proof which would have been offered by Crutcher would not have been helpful because it was inconsistent with the trial testimony of the petitioner.

In this appeal, the petitioner asserts that his trial counsel was ineffective by failing to communicate the misdemeanor plea offer to him and by failing to call his sister, Ms. Holloway, and his brother, Crutcher, as witnesses at trial. The state submits that the petitioner failed to prove his claims by clear and convincing evidence.

Under our statutory law, the petitioner bears the burden of proving the allegations in his post-conviction petition by clear and convincing evidence. See Tenn. Code Ann. § 40-30-210(f) (1997).[2] Evidence is clear and convincing when there is no serious or substantial doubt about the accuracy of the conclusions drawn from the evidence. Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998). On appeal, the findings of fact made by the post-conviction court are conclusive and will not be disturbed unless the evidence contained in the record preponderates against them. Brooks v. State, 756 S.W.2d 288, 289 (Tenn. Crim. App. 1988). The burden is on the petitioner to show that the evidence preponderated against those findings. Clenny v. State, 576 S.W.2d 12, 14 (Tenn. Crim. App. 1978). The credibility of the witnesses and the weight and value to be afforded their testimony are questions to be resolved by the post-conviction court. Bates v. State, 973 S.W.2d 615 (Tenn. Crim. App. 1997).

Claims of ineffective assistance of counsel are regarded as mixed questions of law and fact. State v. Honeycutt, 54 S.W.3d 762, 766-67 (Tenn. 2001); State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). When reviewing the application of law to the post-conviction court's factual findings, our review is de novo, and the post-conviction court's conclusions of law are given no presumption of correctness. Fields v. State, 40 S.W.3d 450, 457-58 (Tenn. 2001); see also State v. England, 19 S.W.3d 762, 766 (Tenn. 2000).

A petitioner seeking post-conviction relief on the basis of ineffective assistance of counsel, must first establish that the services rendered or the advice given was below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). Second, he must show that the deficiencies "actually had an adverse effect on the defense." Strickland v. Washington, 466 U.S. 668, 693 (1984). Should the petitioner fail to establish either factor, he is not entitled to relief. Our supreme court described the standard of review as follows:

---

[2]In 2003, the Post-Conviction Procedure Act was renumbered within the Code. It now appears at sections 40-30-101 through 40-30-122.

Because a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the petitioner makes an insufficient showing of one component.

Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996).

On claims of ineffective assistance of counsel, the petitioner is not entitled to the benefit of hindsight, may not second-guess a reasonably based trial strategy, and cannot criticize a sound, but unsuccessful, tactical decision made during the course of the proceedings. Adkins v. State, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). Such deference to the tactical decisions of counsel, however, applies only if the choices are made after adequate preparation for the case. Cooper v. State, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

Our supreme court has held that trial counsel's failure to relate a plea offer to a defendant renders counsel's representation deficient. Harris v. State, 875 S.W.2d 662 (Tenn. 1994). Further, the Standards for Criminal Justice of the American Bar Association provide, in pertinent part, as follows:

Because plea discussions are usually held without the accused being present, the lawyer has the duty to communicate fully to the client the substance of the discussions. . . . The client should be given sufficient information to participate intelligently in the decision whether to accept or reject a plea proposal. It is important that the accused be informed both of the existence and the content of proposals made by the prosecutor; the accused, not the lawyer, has the right to decide whether to accept or reject a prosecution proposal . . . .

ABA Standards for Criminal Justice: Prosecution Function and Defense Function, std. 4-6.2 commentary (3d ed. 1993). A showing of deficient performance alone, however, does not entitle the petitioner to relief. Instead, he must also establish by clear and convincing evidence that he was prejudiced by counsel's deficiency. In the context of uncommunicated plea offers, "the petitioner must show that there is a reasonable probability that he or she would have accepted the plea had it been properly communicated." State v. Garrison, 40 S.W.3d 426, 431 (Tenn. 2001). "Such a 'reasonable probability' is defined as a 'probability sufficient to undermine confidence in the outcome' of the proceedings." Id. (citing Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997)).

The post-conviction court specifically concluded that the misdemeanor plea offer had been communicated to the petitioner and that the petitioner had rejected the offer. The court accredited the testimony of Jacks, the investigator for the Public Defender's Office, who contended that he had spoken with the petitioner about the state's proposal and had encouraged him to accept. Both Jacks and trial counsel recalled that the petitioner adamantly insisted upon a trial, explaining that he "wanted to be vindicated" and that he felt he had been "done wrong" by the victim and her children.

While it might be unusual that trial counsel had no recollection of the misdemeanor offer by the state and could not remember having made a recommendation on the proposal one way or the other, that does not entitle the petitioner to relief. It is our view that the evidence does not preponderate against the post-conviction court's finding that the state had made a lenient offer of compromise and that the petitioner, after being made aware of its terms, chose to exercise his right to a trial.

The post-conviction court also concluded that neither the testimony of the petitioner's brother nor his sister would have changed the outcome of the trial. While Ms. Holloway testified that she had seen the victim's sons "cooking" crack in the residence where the fire occurred, she could not confirm that they used the location to sell drugs. Further, she offered absolutely no testimony to support the petitioner's theory that the house had been burned by rival gang members. Similarly, although Crutcher's testimony at the post-conviction hearing established an alibi for the petitioner at the time of the fire, it was diametrically opposed to the petitioner's own testimony during trial. In consequence, it is unlikely that the testimony of either of these witnesses would have changed the outcome of the trial. The petitioner is not entitled to relief on this issue.

Accordingly, the judgment of the trial court is affirmed.

_____
GARY R. WADE, PRESIDING JUDGE