IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs November 15, 2005

## STATE OF TENNESSEE v. ANDREW BOONE

**Direct Appeal from the Criminal Court for Shelby County**
**No. 03-00736     Arthur T. Bennett, Judge**

---

**No. W2005-00158-CCA-R3-CD  - Filed December 27, 2005**

---

After being indicted for aggravated assault and vehicular assault, the defendant, Andrew Boone, was convicted by jury of reckless aggravated assault, a Class D felony. He was sentenced as a standard offender to four years in the county workhouse, and his driver's license was suspended for one year for violating the implied consent statute. On appeal, he presents five issues for our review: (1) whether the trial court erred in admitting irrelevant evidence; (2) whether the trial court properly instructed the jury as to the elements of reckless aggravated assault; (3) whether the trial court erred in refusing to instruct the jury on reckless driving as a lesser-included offense of reckless aggravated assault; (4) whether the evidence was sufficient to support his conviction for reckless aggravated assault; and (5) whether the trial court erred in determining the length and the manner of service of his sentence. Upon review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

J.C. MCLIN, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR. and NORMA MCGEE OGLE, JJ., joined.

Leslie I. Ballin and Gray W. Bartlett, Memphis, Tennessee, for the appellant, Andrew Boone.

Paul G. Summers, Attorney General and Reporter; Leslie Price, Assistant Attorney General; William L. Gibbons, District Attorney General; and Lee Coffee, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I. FACTS

The following evidence was presented at trial. Tommy Arnold, an off-duty police officer, testified that he was driving east on Highway 64 in his Ford Bronco. As he approached a rise in the road, he heard "what sounded like a high performance motor revving" and "tires squealing." Shortly thereafter, Arnold saw a car, in the westbound lane of Highway 64, sliding sideways in the road.

According to Arnold, the car was completely turned around and slid "all the way across four lanes of Highway 64 toward [his] direction." Although Arnold attempted to avoid the oncoming car, the car "slammed into the side of [his] Bronco" near the driver-side door. The force of the collision knocked Arnold's Bronco off the highway and approximately thirty feet down into the ditch.

Arnold testified that after the collision, he went to see if anyone was hurt. Arnold identified the car as a black Dodge Viper and the defendant as the driver of the Viper. Arnold stated that he also noticed a passenger "slumped over" in the front seat. Describing the damage to his vehicle, Arnold explained that the impact "crunched [his truck] like an accordion." Arnold elaborated, stating that his Bronco was completely totaled. Regarding his injuries, Arnold explained that he suffered injuries to his face and neck, requiring fifty-seven stitches and cosmetic surgery. He also stated that he suffered injuries to his hand. Arnold further stated that he received physical therapy for "deep tissue damage." Photographs of Arnold's facial injuries were introduced into evidence.

During cross-examination, Arnold stated that he did not see the Viper lose control but saw the Viper when it was "already sideways and sliding." Arnold also acknowledged that he and the defendant had reached a civil settlement.

John Rumancik testified that he was stopped at a traffic light, westbound on Highway 64 around Houston Levee or "somewhere about three or four stop lights east of the interstate" overpass. While stopped at the traffic light, Rumancik saw a Dodge Viper positioned ahead of him. According to Rumancik, traffic was heavy in the area. Rumancik stated that he heard the Viper's tires squeal and observed the Viper take off, "switching lanes as it hit each stop light . . . weaving in and out of traffic." Rumancik explained that sometimes the Viper would weave in and out of the left and right "safety lanes." Rumancik testified that he normally traveled in the right-hand lane and stayed in the right lane. In an effort to clarify his testimony, Rumancik sketched a drawing, roughly detailing Highway 64 and illustrating the Viper's maneuvers through the traffic. When asked by the prosecutor, Rumancik characterized the defendant's driving as "reckless for the traffic conditions."

Rumancik testified that he saw the Viper through several stop lights, but at some point he lost sight of the Viper, and the next time he saw it, the collision had already occurred. Rumancik could not recall how much time had lapsed between losing sight of the Viper and observing the scene of the accident. Rumancik described the Viper's post-collision position as past the I-40 interchange on the eastbound lane of Highway 64 across the median.

Jon Oberhausen testified that he was westbound on Highway 64 when he saw a "black sports car" pull up behind him. At the time, he was stopped in the left lane of Highway 64 at a traffic light located before the I-40 interchange. When the traffic light turned green, he drove underneath the I-40 overpass and heard "this loud noise of a car accelerating and [a] black sports car" passed him on the right. After the black sports car passed him, the car moved to the right of the main road, hit some loose gravel, and began to fishtail. According to Oberhausen, the driver "tried to correct, did a 180," and then "slid all the way across the four lanes of traffic," hit a directional sign in the median and hit a black SUV. When asked, Oberhausen stated that the gravel was not on Highway 64, but

in the area where the lane breaks away from the highway and becomes the on-ramp lane to I-40. Oberhausen also stated that he heard the sports car accelerating when driving under the overpass. Oberhausen drew a diagram of the roadway and the defendant's path of travel.

On cross-examination, Oberhausen reiterated that the sports car also stopped at the traffic light prior to passing him underneath the I-40 overpass. Oberhausen stated that he was going "20 to 25 miles per hour" when the defendant's car passed him and stated that the defendant's car was traveling "very fast." However, Oberhausen was not willing to estimate how fast the defendant's car was traveling. Oberhausen estimated that the distance from the I-40 overpass to the gravel located near the ramp area was approximately 25 to 40 feet. According to Oberhausen, the sports car's right rear tire appeared to spin on the gravel; whereupon, the driver overcorrected and lost control of the car.

James Chamblee testified that he was traveling eastbound on Highway 64 when he heard tires squealing. He observed a black Dodge Viper, traveling west, "fly[] across the median." Chamblee saw that the Viper was backwards as it moved across the median. Chamblee stated that the Viper then hit a sign in the median and hit a Bronco directly in front of him. Chamblee observed that the man in the Bronco "was bleeding from the face and neck area pretty bad," and the passenger in the Viper had been injured. Chamblee identified the defendant as the driver of the Viper.

Angus Mixon testified that he was traveling east on Highway 64 and observed the collision. He recalled that the Viper was traveling "really fast" in the outside westbound lane when it started to swerve. After hitting the sign in the median, the Viper came across the lanes and hit a Bronco. Mixon stated that he stayed to give a statement to police and noticed that the passenger of the Viper had been injured in the collision.

Police Officer Allan Craig, Jr. testified that he responded to the accident on Highway 64. He explained that Highway 64 was a four-lane road with a joining middle turn lane. He also stated that the speed limit on Highway 64 was 55 miles per hour east of the I-40 overpass and 45 miles per hour west of the overpass. Upon arrival at the scene, Officer Craig observed a Bronco in the ditch on the south side of the highway and its driver sitting in the back of an ambulance. Officer Craig also observed that the defendant had "bloodshot watery eyes, slurred speech, [had an] odor of intoxicant coming off of him, [and] staggered a little bit." Officer Craig asked the defendant about the odor, and the defendant told him that he had consumed one beer. On cross-examination, Officer Craig acknowledged that the defendant's staggering could have been caused by the collision. He also acknowledged that drinking and driving violates the law only when too much drinking leads an individual to become impaired.

Police Officer Robert Hardy testified he also responded to the accident on Highway 64. He recalled that the defendant "was stumbling around a little bit and acting kind of confused." Also, the defendant "had an odor of intoxicant on his breath and [he] smelled like he had spilled some on his chest." Officer Hardy stated, however, that the defendant "was very cooperative and very polite." According to Officer Hardy, the defendant told him that he had one beer that day.

Police Officer David Sloan testified that he wrote the accident report. He stated that he interviewed both drivers involved in the accident, spoke to some witnesses, and sketched a diagram of the accident scene. When interviewing the defendant, Officer Sloan smelled a strong odor of intoxicant. The defendant told him that he was traveling west on Highway 64 when he lost control of the vehicle. According to Officer Sloan, the skid marks on the highway measured approximately 115 feet and started from outside the right lane of the westbound traffic route in a marked off triangle area, then crossed over all lanes of traffic, and ended on the opposite shoulder of the eastbound traffic route. On cross-examination, Officer Sloan conceded that he did not mention with particularity the location where the skid marks started. He also acknowledged that the pictures of the area did not indicate the start of the skid marks.

Sheriff's Deputy Patrick Siano testified that he spoke with the defendant at the scene of the accident. According to Deputy Siano, the defendant told him that he had just left a party to pick up a friend's car. The defendant told him that he was going the speed limit but lost control of the car. The defendant also told him that he had two beers at the party earlier that day. Deputy Siano stated that he recorded his conversation with the defendant, and the tape was introduced into evidence.

The defendant testified that he was twenty-two years old at the time of the accident. He recalled that the day of the accident, he was driving a Dodge Viper, which belonged to his father. According to the defendant, he had only driven the Viper twice prior to the accident, and both times his father was present with him and the drive was only for a short distance. The defendant described the Viper as having a six gear, manual shift with three compact pedals and suggested that he was not accustomed to driving the Viper.

The defendant testified that he was attending a cookout and swim party when his father called and told him to meet him at a local restaurant on Highway 64 to switch cars. Shortly thereafter, he and his roommate, Mark Fry, left the party. The defendant stated that he planned on dropping off his roommate at their apartment, then head towards the restaurant to meet with his father. The defendant recalled that he turned right on Highway 64 from Davies Plantation. He drove the speed limit and when necessary passed those cars going slower than he was driving. He also stated that he stopped at every stoplight between Davies Plantation and the accident site on Highway 64. As he approached the I-40 interchange, he pulled into the left lane behind Oberhausen and stopped at the traffic light. When the light turned green, the defendant noticed that a car ahead of him in the right lane moved out of the lane onto the I-40 on-ramp. Therefore, the defendant switched to the right lane. Traveling in the right lane, the defendant downshifted from third to second gear because a car ahead of him was "going kind of slow," and Oberhausen was "kind of behind" him, so there was an "opening." As the defendant was downshifting, he "popped the clutch and kind of started fishtailing." According to the defendant, he accidently hit the gas pedal instead of the brake because the pedals were so close together, and he lost control of the Viper.

The defendant asserted that the collision was a "complete accident." He denied passing vehicles in the turn or emergency lanes of the highway. On cross-examination, the defendant

admitted that he did not tell Officer Siano about his mixup with the pedals. However, he stated that he was dazed and confused after the accident and it was a "circus out there" with "so much going on at once." He also acknowledged that it was not a good idea for any person to drive in safety lanes, switch lanes incessantly, or drive fast in congested traffic. On redirect examination, the defendant denied driving recklessly.

Michael Frye testified that he was the passenger in the defendant's vehicle on the day of the accident. He recalled that he and the defendant were going to meet the defendant's father to switch cars then go home to clean up. Regarding the collision, Frye stated that the defendant pulled up to the traffic light before the I-40 overpass. When the light turned green, the defendant accelerated, passed a car in front of him, then lost control of the car. The last thing Frye remembered was hitting a sign and "going off into oncoming traffic."

Frye testified that the defendant was driving normally, not recklessly. He stated that the defendant drove near the speed limit and made a few normal lane changes. Frye also stated that the defendant did not travel in the emergency or median lanes in order to pass cars. According to Frye, he sustained injuries to his arm and forehead. On cross-examination, Frye acknowledged that the Dodge Viper was a very powerful and fast car. He also recalled that the defendant was gearing up from second to third, not gearing down. Frye stated that he could not think of any reason for the defendant to be gearing down and slowing down. However, Frye insisted that the defendant, as the driver, was in a better position to explain his driving.

After hearing the evidence, the jury found the defendant guilty of reckless aggravated assault. Thereafter, the trial court sentenced the defendant as a standard offender to four years in the county workhouse and suspended his driver's license for one year for violating the implied consent statute.

## II. ANALYSIS

### A. Admissibility of Evidence

On appeal, the defendant challenges the admissibility of certain evidence based upon its relevancy. The Tennessee Rules of Evidence provide that all "relevant evidence is admissible" unless excluded by other evidentiary rules or applicable authority. See Tenn. R. Evid. 402. Of course, "[e]vidence which is not relevant is not admissible." Id. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Id. at 401. However, even relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Id. at 403. A trial court's decision as to the admissibility of evidence will be reversed only upon a showing of abuse of discretion. See State v. Powers, 101 S.W.3d 383, 395 (Tenn. 2003); State v. James, 81 S.W.3d 751, 759 (Tenn. 2002). When attempting to exclude otherwise admissible and relevant evidence, the

individual seeking exclusion bears a "significant burden of persuasion." James, 81 S.W.3d at 757-58.

The defendant first argues that it was error for the trial court to allow the witness, Rumancik, to respond negatively to the State's question "Is that where you normally drive?" Upon review of the record, we note that Rumancik's response to the State's question was related to his testimony that the defendant had been driving in the "safety lanes" of Highway 64. Therefore, Rumancik's answer was probative of the fact that he perceived the defendant's driving as outside the boundaries of normal driving on Highway 64. Accordingly, the testimony was relevant and the trial court did not err in admitting it.

As a related matter, the defendant argues that the trial court erred in allowing Rumancik to sketch a drawing representing the roadway and the defendant's path of travel. The defendant asserts that the drawing contains no distances or geographical markers and does not depict the scene of the accident. Again, the record reflects that Rumancik's drawing was relevant to his observations of the lanes of travel as well as the defendant's driving within those lanes. Therefore, the trial court did not err in allowing Rumancik to sketch a drawing illustrative of his testimony.

The defendant next argues that the trial court erred in allowing the State to question him regarding his opinion of what constitutes reckless driving. Here, the State asked the defendant if he "saw somebody passing people on the shoulder of the emergency lane and the turning lane . . . would [he] think that would be reckless." The trial court allowed the defendant to answer over the defense's objection. The defendant answered, "I think it was a little bit - - yes, sir, that's not the way to drive." Upon review of the applicable testimony, we determine the testimony probative of the defendant's opinion as to what actions he considered to be reckless driving. In addition, we fail to see how the defendant was unfairly prejudiced in that he could control his answer to the State's question, and the State was relegated to accept his answer to the question. Furthermore, we reiterate that the standard of review for the admission of relevant evidence is deferential to the trial court's decision. Under this standard, the defendant has not shown that the trial court erred.

**B. Jury Instruction**

**1. Reckless Aggravated Assault**

The defendant argues that the trial court erred in instructing the jury as to the elements of reckless aggravated assault. Specifically, the defendant argues that the trial court erred by stating that reckless aggravated assault requires only "bodily injury" as opposed to "serious bodily injury."

In criminal cases, a defendant has a right to a correct and complete charge of the law. State v. Garrison, 40 S.W.3d 426, 432 (Tenn. 2000). Thus, it follows that the trial court has a duty to give a complete charge of the law applicable to the facts of a case. State v. Thompson, 519 S.W.2d 789, 792 (Tenn. 1975). The failure to do so deprives the defendant of the constitutional right to a jury trial. Garrison, 40 S.W.3d at 432. In evaluating claims of error in the jury charge, this Court must review the charge in its entirety and read it as a whole. State v. Leach, 148 S.W.3d 42, 58 (Tenn.

2004).  A charge is considered "prejudicially erroneous if it fails to fairly submit the legal issues or if it misleads the jury as to the applicable law." State v. Hodges, 944 S.W.2d 346, 352 (Tenn. 1997).

In relevant part, the trial court's instructions to the jury on reckless aggravated assault were as follows:

> For you to find the defendant guilty of this offense, the state must have proven beyond a reasonable doubt the existence of the following essential elements:
>
> (1) that the defendant recklessly caused bodily injury to Thomas Arnold; and
> (2) that the defendant used a deadly weapon, to-wit: Motor Vehicle.

Upon review, we conclude that the jury instruction in this case fairly defined reckless aggravated assault and did not mislead the jury.  A person commits assault when that person "[i]ntentionally, knowingly or recklessly causes bodily injury to another." Tenn. Code Ann. § 39-13-101(a)(1).  A person commits aggravated assault when that person intentionally, knowingly, or recklessly commits an assault *and* "causes serious bodily injury to another," *or* "uses or displays a deadly weapon." Id. § 39-13-102(a).  A motor vehicle can constitute a deadly weapon for the purposes of aggravated assault.  State v. Tate, 912 S.W.2d 785, 787 (Tenn. Crim. App. 1995).  As such, the jury was properly instructed on the elements of reckless aggravated assault as applied to the facts of this case.  The defendant is not entitled to relief on this issue.

## 2. Reckless Driving

The defendant next argues that the trial court erred in refusing to instruct the jury on reckless driving as a lesser-included offense of reckless aggravated assault.  The defendant submits that reckless aggravated assault "in essence charges that the defendant's reckless operation of a motor vehicle caused bodily harm."  Therefore, the defendant argues that, in his case, reckless driving should have been considered a lesser-included offense of aggravated assault because the offense of reckless driving is encompassed within the elements of reckless aggravated assault absent the element of bodily injury.

According to State v. Burns, 6 S.W.3d 453 (Tenn. 1999), an offense is considered lesser-included of a greater offense if:

> (a) all of its statutory elements are included within the statutory elements of the offense charged; or
> (b) it fails to meet the definition in part (a) only in the respect that it contains a statutory element or elements establishing
> (1) a different mental state indicating a lesser kind of culpability; and/or
> (2) a less serious harm or risk of harm to the same person, property or public interest
> . . . .

Id. at 466-67. Whether instruction on a lesser-included offense should be given hinges upon whether the trial court, viewing the evidence most favorably to the existence of the lesser-included offense, concludes that (a) "evidence exists that reasonable minds could accept as to the lesser-included offense," and (b) that the evidence "is legally sufficient to support a conviction for the lesser-included offense." Id. at 469. The failure to instruct the jury on lesser-included offenses requires a reversal unless the reviewing court determines that the error was harmless beyond a reasonable doubt. See State v. Ely, 48 S.W.3d 710, 727 (Tenn. 2001). Upon review, this Court must determine "(1) whether an offense is a lesser-included offense; (2) whether the evidence supports a lesser-included offense instruction; and (3) whether an instructional error is harmless." State v. Allen, 69 S.W.3d 181, 187 (Tenn. 2002). In making this determination, this Court must "conduct a thorough examination of the record, including the evidence presented at trial, the defendant's theory of defense, and the verdict returned by the jury." Id. at 191.

A person commits aggravated assault when he or she intentionally, knowingly, or recklessly commits an assault, as defined in section 39-13-101, and "causes serious bodily injury to another," or "uses or displays a deadly weapon." Tenn. Code Ann. § 39-13-102(a). One is guilty of reckless driving if he or she drives any vehicle in a willful or wanton (reckless) disregard for the safety of persons or property. Id. § 55-10-205; see also State v. John W. Archey, No. M2001-02148-CCA-R3-CD, 2002 WL 1732355, *2 (Tenn. Crim. App., at Nashville, July 26, 2002) ("A wanton act is one done with reckless disregard of the consequences or rights or safety of others.").

Upon review, we determine that the offense of reckless driving is not a lesser-included offense of reckless aggravated assault as charged in this case. While we recognize the essence of the reckless aggravated assault charge in this case was that the defendant caused bodily injury by recklessly using a vehicle as a deadly weapon, we find that the elements of reckless aggravated assault are separate from the elements of reckless driving. First, reckless driving requires proof of the actual driving of a vehicle; the offense of reckless aggravated assault does not. Second, reckless aggravated assault requires proof of actual bodily injury to another person; the offense of reckless driving does not. Third, reckless aggravated assault requires proof of an assault accompanied by either a deadly weapon or serious bodily injury; whereas, reckless driving requires neither element. Accordingly, the defendant is not entitled to relief on this issue.

### C. Sufficiency of Evidence

The defendant argues that the evidence was insufficient for the jury to find him guilty of reckless aggravated assault. Specifically, the defendant asserts that the evidence proved that the collision was accidental and not the result of reckless driving.

Our review begins with the well-established rule that once a jury finds a defendant guilty, his or her presumption of innocence is removed and replaced with a presumption of guilt. State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992). Therefore, on appeal, the convicted defendant has the burden of demonstrating to this Court why the evidence will not support the jury's verdict. State v.

Carruthers, 35 S.W.3d 516, 557-58 (Tenn. 2000); State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). To meet this burden, the defendant must establish that no "rational trier of fact" could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979); State v. Evans, 108 S.W.3d 231, 236 (Tenn. 2003); Tenn. R. App. P. 13(e). In contrast, the jury's verdict approved by the trial judge accredits the State's witnesses and resolves all conflicts in favor of the State. State v. Harris, 839 S.W.2d 54, 75 (Tenn. 1992). The State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn from that evidence. Carruthers, 35 S.W.3d at 558. Questions concerning the credibility of the witnesses, conflicts in trial testimony, the weight and value to be given the evidence, and all factual issues raised by the evidence are resolved by the trier of fact and not this Court. State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). We do not attempt to re-weigh or re-evaluate the evidence. State v. Reid, 91 S.W.3d 247, 277 (Tenn. 2002). Likewise, we do not replace the jury's inferences drawn from the circumstantial evidence with our own inferences. Id.

As previously stated, an assault is committed when an individual "intentionally, knowingly or recklessly causes bodily injury to another." Tenn. Code Ann. § 39-13-101(a)(1). An assault is elevated to a reckless aggravated assault if the assault is committed recklessly and serious bodily injury to another occurs, or a deadly weapon is displayed or used. Id. § 39-13-102(a)(2). A motor vehicle can constitute a deadly weapon. Tate, 912 S.W.2d at 787. The reckless element of reckless aggravated assault is defined as follows:

> "Reckless" refers to a person who acts recklessly with respect to circumstances surrounding the conduct or the result of the conduct when the person is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the accused person's standpoint.

Tenn. Code Ann. § 39-11-302(c).

In the instant case, the State had the burden of proving, beyond a reasonable doubt, that the defendant recklessly operated his vehicle as a deadly weapon and caused bodily injury to another. At trial, the testimony of many witnesses established that the defendant was driving a Dodge Viper on Highway 64; whereupon, he collided with another vehicle, injuring the driver. Although the defendant and his passenger both testified that the defendant was driving normally and the collision was an unfortunate accident, other witnesses testified differently. Rumancik testified that, prior to the collision, he observed the defendant squealing his tires upon acceleration, switching lanes in heavy traffic, and weaving in and out of the safety lanes. Rumancik described the defendant's driving as reckless for the traffic conditions. Oberhausen, an eyewitness to the collision, testified that he saw the defendant accelerate past him, then lose control of the vehicle after hitting some gravel located outside the right-hand lane, near the I-40 on-ramp. Oberhausen stated that the defendant was driving "very fast." Mixon, another eyewitness, stated that the defendant was

traveling "really fast." Officers Craig and Hardy both testified that the defendant smelled of an intoxicant. Officer Sloan testified that the skid marks from the defendant's vehicle measured approximately 115 feet. Officer Sloan stated that the skid marks started from outside the right, westbound lane in a marked off triangle area, then crossed over all lanes of traffic, and ended on the opposite shoulder of the eastbound lane.

After considering the evidence in the light most favorable to the State, we are of the opinion that the evidence supports the defendant's conviction for reckless aggravated assault. It was within the province of the jury to evaluate the credibility of the witnesses and weigh the evidence. Apparently by their verdict, the jury accredited the testimony of the state witnesses over the defense witnesses and determined that the defendant recklessly used his vehicle as a deadly weapon and caused bodily injury. Therefore, the defendant is not entitled to relief on this issue.

## D. Sentencing

The defendant challenges both the length and the manner of service of his sentence. Appellate review of a challenged sentence is a de novo review of the record with a presumption that the trial court's determinations are correct. Tenn. Code Ann. § 40-35-401(d). This presumption of correctness is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances. State v. Pettus, 986 S.W.2d 540, 543-44 (Tenn. 1999). However, if the record shows that the trial court failed to consider the sentencing principles and all relevant facts and circumstances, then review of the challenged sentence is purely de novo without the presumption of correctness. State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). On appeal, the defendant has the burden of showing that the sentence imposed by the trial court is improper. Tenn. Code Ann. § 40-35-401(d), Sentencing Commission Comments. In conducting our review, this Court considers the following: the evidence received at the trial and sentencing hearing; the presentence report; the principles of sentencing; the arguments of counsel relative to sentencing alternatives; the nature and characteristics of the criminal conduct; any mitigating or enhancement factors; any statements made by the defendant in his or her own behalf; and the potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-103, -210; see Ashby, 823 S.W.2d at 168.

## 1. Sentence Length

The defendant first submits that it was error to impose the maximum sentence of four years for his reckless aggravated assault conviction. More specifically, the defendant contends that enhancement factors (4), (9), and (14), and mitigation factors (6), (11), and (13) were improperly considered.

The sentencing range for a Range I offender who commits a Class D felony is two to four years. Tenn. Code Ann. § 40-35-112(a)(4). At the time of the defendant's sentencing, our sentencing scheme indicated that the presumptive sentence for a Class D felony was the minimum

-10-

in the range if no enhancement or mitigating factors were present. Id. § 40-35-210(c).[1] Procedurally, the trial court starts with the minimum sentence, increasing the sentence within the range as appropriate based upon the existence of enhancement factors and then reducing the sentence within the range as appropriate based upon the existence of mitigating factors. Id. § 40-35-210(d)-(e). The weight to be afforded an existing factor is left to the trial court's discretion so long as the court complies with the statutory sentencing guidelines and its findings are adequately supported by the record. See State v. Souder, 105 S.W.3d 602, 606 (Tenn. Crim. App. 2002).

In sentencing the defendant to four years, the trial court applied the following enhancement factors: (2) the defendant has a previous history of criminal convictions or criminal behavior; (4) the offense involved more than one victim; (9) the defendant has a previous history of unwillingness to comply with the conditions of a sentence involving release in the community; and (14) that the felony was committed while on probation. See Tenn. Code Ann. § 40-35-114(2), (4), (9), and (14) (2003). The trial court also considered mitigating evidence: that the defendant, because of youth, lacked substantial judgment in committing the offense; the crime was committed under such unusual circumstance that it is unlikely that a sustained intent to violate the law motivated the criminal conduct, and the defendant's conduct, albeit reckless, did not evidence a specific intent to commit the offense. See Tenn. Code Ann. § 40-35-113(6), (11), and (13). However, the trial court found that the mitigation evidence carried little or no weight. The court then found that the enhancement factors greatly outweighed the mitigating factors.

We begin our analysis by noting that the defendant does not challenge the applicability of enhancement factor (2) that he has a criminal history. Moreover, the record reflects that the defendant has a history of criminal convictions and behavior. Therefore, the trial court correctly applied enhancement factor (2). With regard to enhancement factor (4), we determine that this factor was incorrectly applied. In the instant case, the trial court found that the passenger in the defendant's vehicle was also injured as a result of the defendant's reckless driving. As a result, the court applied enhancement factor (4), the offense involved more than one victim. Our supreme court has held that when an offense such as aggravated assault necessarily involves a specific, named victim, the application of the "multiple victim" enhancement factor is not appropriate. State v. Imfeld, 70 S.W.3d 698, 705-06 (Tenn. 2002). The supreme court also stated that the application of this factor on the basis that there were victims in the accident who were not named in the indictment does not constitute circumstances appropriate for the application of this factor. Id. As such, enhancement factor (4) was improperly applied to the defendant's sentence.

With regard to enhancement factors (9) and (14), the defendant argues that the factors are factually identical for sentencing purposes and the application of both factors results in the double enhancement of his sentence. To begin, we note that the defendant has failed to cite any authority

---

[1] Since the defendant's sentencing, Tennessee's sentencing scheme has been modified. Modifications include the renumbering of enhancement factors and the indication that application of enhancement factors is advisory, not mandatory. See Tenn. Code Ann. §§ 40-35-114, -210.

for his argument. "Issues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court." Tenn. Ct. Crim. App. R. 10(b). Moreover, we are unaware of any legal authority precluding the application of both of these enhancement factors. Therefore, this issue is without merit.

Turning to the defendant's argument regarding the trial court's rejection of mitigating factors (6), (11), and (13), we note that the record reflects that the trial court considered the mitigating factors but assigned them little to no weight. With regard to mitigating factor (6), the trial court found the factor to be of no force because the defendant was in his twenties and knew how to drive "within the law." With regard to mitigating factor (11), the trial court found that it carried "little weight" because the defendant should have known his conduct was likely to injure or kill someone even if he had no specific intent to kill or hurt anyone. The trial court found that the proof at trial indicated that the defendant "had a sustained intent to violate the law." With regard to mitigating factor (13), the "catchall factor," the defendant argued that his conduct, although reckless, did not evidence a specific intent to commit the offense of aggravated assault. Here, the trial court gave the factor "little value" because the defendant's reckless driving violated the law and placed others at risk for injury. Upon review, we reiterate that the weight assigned to enhancement and mitigating factors is generally left to the trial court's discretion. Here, the trial court considered the mitigating evidence but assigned it little to no weight. Accordingly, we conclude that evidence in the record does not preponderate against the trial court's limited consideration of the mitigation evidence.

With the exception of the enhancement factor (4), we determine that the trial court properly applied enhancement factors (2), (9), and (14). We further determine that the trial court properly considered and assigned little to no weight to the mitigation evidence. Based on the proper application of three enhancement factors, which greatly outweighed the weakly supported mitigating factors, we conclude that the trial court did not err in sentencing the defendant to four years for his reckless aggravated assault conviction.

## 2. Alternative Sentencing

Finally, the defendant argues that the trial court erred in denying alternative sentencing and imposing full confinement. Specifically, the defendant asserts that the presentence report reflects a criminal history of a single drug offense for which he was placed on probation. The defendant points out that the trial court alluded to a probation sentence from a DUI charge when denying alternative sentencing. The defendant asserts that the presentence report does not mention this and argues that the trial court erred in relying solely on his limited criminal record and the circumstances of the offense.

A defendant is presumed to be a favorable candidate for alternative sentencing if the defendant is an especially mitigated or standard offender convicted of a Class C, D, or E felony and there exists no evidence to the contrary. Tenn. Code Ann. § 40-35-102(6). However, this presumption is unavailable to a defendant who commits the most severe offenses, has a criminal history showing clear disregard for the laws and morals of society, and has failed past efforts at

rehabilitation. Id. § 40-35-102(5); State v. Fields, 40 S.W.3d 435, 440 (Tenn. 2001). Also, the presumption in favor of alternative sentencing may be rebutted by facts contained in the presentence report, evidence presented by the State, the testimony of the accused or a defense witness, or any other source, provided it is made a part of the record. State v. Parker, 932 S.W.2d 945, 958 (Tenn. Crim. App. 1996). Pursuant to Tennessee Code Annotated section 40-35-103, a trial court may determine if incarceration rather than alternative sentencing is appropriate if the evidence shows that:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant. . . .

Tenn. Code Ann. § 40-35-103(1)(A)-(C). As part of its determination, the trial court may also consider the defendant's potential or lack of potential for rehabilitation. Id. § 40-35-103(5). Additionally, the defendant's lack of truthfulness or candor is an appropriate consideration as it relates to the defendant's potential for rehabilitation. State v. Nunley, 22 S.W.3d 282, 289 (Tenn. Crim. App. 1999); State v. Dowdy, 894 S.W.2d 301, 306 (Tenn. Crim. App. 1994).

In denying alternative sentencing, the trial court addressed the defendant and stated the following:

> [I]t appears to me that since you were on probation for a major felony in Florida, a drug case - - I think it was five years . . . you get this offense. You had a DUI also that you were on probation on up here. And you get this offense. And I - - I heard the testimony in this case.

> And contrary to what you [said] today on the stand that . . . what happened was your foot just slipped off the peddle in the car. That's not true. Your foot must have slipped a mile away and kept slipping off all the way down the highway like the [witness] said. Because it's obvious that a mile or so of slipping off and screeching around cars, almost running them off the road, you must have a . . . wiggly foot that keeps slipping off the peddle. So I don't believe that. So don't tell me that. It's best to just tell the truth about it.

> . . . .

> And so the court feels that you're not amenable to telling the truth. . . .

> [Looking at this case,] I think . . . you knew you were running and driving recklessly around these cars and cutting in and out when you could . . . and that this

terrible accident occurred. I'm not saying that you were trying to kill somebody. But you don't have to try. If you do certain activity and act in certain manners, it's obvious that's going to happen or something close to it. So you . . . knew [you] could cause that. And [you] did cause terrible injury to . . . people and property.

So the court has problems believing your testimony under oath here. You're not willing to accept what you did wrong yet. . . . And the fact that . . . rehabilitation did not help you . . . .

. . . .

And [the court is] of the opinion that . . . since you have this history that . . . sentencing standards do not require this court to grant any relief at this particular time because of . . . the fact that you were on probation on two other cases. And because of the fact that you still won't accept responsibility that you were just driving recklessly that day . . .

We begin our review by noting that the presentence report does not contain evidence that the defendant was convicted of DUI, received probation, and violated that probation. Therefore, the trial court's reliance on this fact is not supported by the record. As such, our review is de novo. With that said, however, we conclude that the record supports the trial court's decision to deny alternative sentencing. In denying alternative sentencing, the trial court primarily considered the defendant's rehabilitation potential. As part of its consideration, the trial court focused on the fact that the defendant was placed on five years probation as a result of a felony drug conviction when he committed the instant offense. Additionally, the trial court found that the defendant was not amenable to telling the truth regarding the circumstances surrounding the collision.

It is our opinion that encompassed in the trial court's determination was the fact that probation, a measure less restrictive than confinement, had been recently applied and had been violated by the occurrence of this present offense. Furthermore, the trial court found the defendant's testimony regarding his driving to be untruthful. As previously stated, a lack of candor reflects negatively on a defendant's potential for rehabilitation and mitigates against an alternative sentence. Also, a trial court is in the best position to assess a defendant's truthfulness because of its ability to observe the defendant's demeanor during his testimony under oath. See Dowdy, 894 S.W.2d at 306. Therefore, the trial court did not err in denying alternative sentencing.

### III. CONCLUSION

In accord with the foregoing reasoning and authorities, the judgment of the trial court is affirmed.

_____
J.C. McLIN, JUDGE