IN THE SUPREME COURT OF TENNESSEE
AT KNOXVILLE
January 4, 2000 Session

## STATE OF TENNESSEE v. JOHN C. GARRISON

**Appeal by permission from the Court of Criminal Appeals**
**Circuit Court for Bledsoe County**
**No. 10436    Thomas W. Graham, Judge**

—————————

**No. E1997-00045-SC-R11-CD - Filed November 22, 2000**

—————————

The defendant, John C. Garrison, was convicted by a jury of solicitation to commit first degree murder. In this appeal, he raises two issues: (1) whether trial counsel's failure to communicate a plea bargain offer from the State is per se prejudicial to the extent necessary to satisfy the prejudice prong of Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); and (2) whether the trial court committed reversible error when it failed to instruct the jury that the "request," as used in the statutory definition of the offense of solicitation, must be intentional. After a thorough consideration of the record and a full review of the authorities, we conclude that trial counsel's failure to communicate a plea bargain offer does not demonstrate, alone, prejudice sufficient to satisfy the second prong of Strickland. We conclude also that the trial court's omission of certain required language from the jury instruction constitutes harmless error. The judgment of the Court of Criminal Appeals is, therefore, reversed and the case is dismissed.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Criminal Appeals**
**Reversed and the Case Dismissed**

ADOLPHO A. BIRCH, JR., J., delivered the opinion of the court, in which E. RILEY ANDERSON, C.J., FRANK F. DROWOTA, III, JANICE M. HOLDER, JJ., and JOHN K. BYERS, S.J., joined.

Michael E. Moore, Solicitor General, Michael J. Fahey, II, Assistant Attorney General, James Michael Taylor, District Attorney General, and James W. Pope, III, Assistant District Attorney General, for the appellant, State of Tennessee.

Gregory P. Isaacs, Knoxville, Tennessee, for the appellee, John Clark Garrison.

**OPINION**

## I. Facts and Procedural History

As a factual prelude to our discussion of the case under submission, John C. Garrison, the defendant, pleaded guilty and was convicted of two counts of theft over $10,000.[1] He was sentenced to concurrent terms of eight years in the Department of Correction. Garrison was irate that he had not received probation. Incarcerated during the pendency of the appeal of the eight-year sentence, he discussed his case with fellow inmates. He specifically mentioned the "unavailability" of one of the witnesses who had testified against him and the withdrawal of his plea of guilty. He intimated to them that were the two above-mentioned events to occur, there would be insufficient evidence to convict him of theft.[2] These discussions included references to the possibility of procuring this witness's murder.

During the course of these discussions, Garrison engaged in separate discussions with prison officials. He told them that he had been approached by other inmates with offers to arrange the murder of the witness. Also during this period of intrigue, and unbeknownst to Garrison, some of the discussions were recorded. One taping was done by an agent of the Tennessee Bureau of Investigation posing as a "killer for hire." The other taping was accomplished by an inmate informant. The evidence preserved on the tapes tended to establish that Garrison indeed solicited the murder of the witness.

Garrison was indicted for solicitation to commit first degree murder,[3] and the trial was set for May 15, 1995. He believed he would be acquitted and retained Thomas N. DePersio, Esquire. DePersio's absence from his office for the full month of March and a week in April 1995 (apparently because of "depression"), his missed appointments, and his unanswered telephone calls led Garrison to suspect that DePersio had not properly investigated the case. Garrison asked him directly about his readiness for trial. DePersio assured him that he was ready. At no point before the completion of the proof did DePersio reveal that the State had offered a plea agreement of a ten year sentence as a Range I, standard offender to be served consecutively to the theft sentences.

At trial for solicitation to commit murder, Garrison testified that he had engaged in pretense when he had discussed hiring a killer with the informant and with the agent. As his reason for the pretense, he said that he did not want to engender the suspicions of the inmates while he was gathering information to assist officials in apprehending the would-be murderers. The jury rejected this testimony and convicted Garrison of solicitation to commit first degree murder. He was sentenced as a Range II, multiple offender to sixteen years imprisonment to be served consecutively to the theft sentences.

---

[1] Garrison was accused of having embezzled money from his business partners.

[2] Apparently, Garrison expected to receive a new trial.

[3] Tenn. Code Ann. §39-12-102 (1997).

## II. Analysis

### A. Ineffective Assistance of Counsel

Prior to trial, DePersio approached the assistant district attorney general and asked if settlement was possible. The assistant district attorney general responded with a sentencing offer of Range I, ten years, consecutive to certain Knox County sentences. The case, however, proceeded to trial, and following conviction, the trial court imposed a sentence of sixteen years–six years greater than the State's pre-trial offer.

It is clear that DePersio failed to communicate this offer to Garrison before trial. In fact, at the hearing on the motion for new trial, an affidavit by DePersio was filed stating the following:

> Shortly before trial of this cause, I spoke with Assistant District Attorney Pope . . . concerning a potential plea agreement in this case. Assistant District Attorney Pope communicated to me a plea offer of 10 years Range I, standard, if Mr. Garrison pled to all counts of the indictment.
>
> Although I met with Mr. Garrison prior to the trial of this cause, I never related to him the offer given to me by Assistant District Attorney Pope.
>
> Mr. Garrison never learned of the State's offer until after the trial of the matter had been concluded.

DePersio testified at the hearing on the motion for new trial that after he had informed Garrison of the offer, Garrison stated that he would not have accepted it. DePersio also testified that he did not believe his failure to inform Garrison of the offer fell below the standard of competence required of attorneys because Garrison had clearly and consistently maintained the need to go to trial to avoid a prolonged incarceration. He testified that he was confident Garrison would not have accepted the offer.

In overruling Garrison's motion for a new trial, the trial court observed:

> With regard to the failure to communicate the State's plea offer, this Court finds that the Defendant had communicated to his attorney early on and throughout his discussions that he would not negotiate a plea. The Court would further note that this particular Defendant was quite familiar with the plea bargaining process, having entered into many pleas over the preceding decade, including four felony pleas . . . . It should be noted that there is no reason to believe

nor proof presented that this Defendant would have accepted the ten (10) year sentence offered by the State a few days before trial.

Thus, by implication, the trial court found that the offer as described by DePersio had indeed been made and that DePersio had failed to relate it to Garrison. As expressed above, the trial court ruled that there was no reason to believe that Garrison would have accepted the offer. It is by reason of this finding that the trial court concluded that Garrison had failed to demonstrate prejudice. Thus, the trial court rejected the claim of ineffective assistance of counsel.

The Sixth Amendment to the United States Constitution and Article I, § 9 of the Tennessee Constitution guarantee criminal defendants the right to representation by counsel. State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). "[T]he right to such representation encompasses the right to 'reasonably effective' assistance, that is, within the range of competence demanded of attorneys in criminal cases." Id. (citing Strickland, 466 U.S. at 687, 104 S. Ct. at 2065, 80 L. Ed. 2d at 693). A defendant is not entitled to redress for a violation of that right, however, unless the substandard performance of the attorney negatively affected the ultimate judgment. Strickland, 466 U.S. at 691-92, 104 S. Ct. at 2067-68, 80 L. Ed. 2d at 696.

In Strickland, the United States Supreme Court adopted a two-prong test for determining whether an ineffective assistance of counsel claim merits relief: (1) the defendant must show that counsel's performance was deficient because the "representation fell below an objective standard of reasonableness," and (2) the defendant must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[4] 466 U.S. at 687-88, 694, 104 S. Ct. at 2064-65, 2068, 80 L. Ed. 2d at 693-94, 698.

The legal premise that counsel's failure to relate a plea offer to a defendant renders counsel's representation deficient[5] was established by this Court in Harris v. State, 875 S.W.2d 662 (Tenn. 1994). Therefore, because the State does not contest the finding implicitly made by the trial court and expressly approved by the Court of Criminal Appeals that DePersio failed to communicate the plea offer to Garrison, we find that Strickland's first prong is satisfied, and we focus on the second

---

[4] It is the defendant's burden to establish both prongs of the test by clear and convincing evidence. Burns, 6 S.W.3d at 461; see also Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996).

[5] As stated in the Standards for Criminal Justice of the American Bar Association:

> Because plea discussions are usually held without the accused being present, the lawyer has the duty to communicate fully to the client the substance of the discussions. . . . [T]he client should be given sufficient information to participate intelligently in the decision whether to accept or reject a plea proposal. It is important that the accused be informed both of the existence and the content of proposals made by the prosecutor; the accused, not the lawyer, has the right to decide whether to accept or reject a prosecution proposal . . . .

ABA Standards for Criminal Justice: Prosecution Function and Defense Function, std. 4-6.2 commentary (3d ed. 1993).

prong. As to the second prong of the analysis, which requires a finding of prejudice, Harris is not dispositive.

Under Strickland's second prong, a petitioner must demonstrate that counsel's omission caused prejudice to his or her cause. Typically, the petitioner must show that counsel's errors were so serious as to deprive the petitioner of a fair trial, a trial whose results are reliable. Id.; Henley v. State, 960 S.W.2d 572, 579-80 (Tenn. 1997).

In cases where counsel did not convey a plea bargain offer to a defendant, however, the fair trial standard described above is not applicable. This inapplicability is obvious–the defendant may have received a fair trial, yet may have been prevented, by below-standard conduct of counsel, from avoiding trial altogether. Thus, a fair trial provides no remedy for counsel's pre-trial failures in this regard.

In lieu of the "fair trial" test for prejudice arising out of claims of ineffective assistance in the plea stage, the United States Supreme Court has established a different standard. When a petitioner asserts that he or she entered a plea as a result of ineffective assistance, he or she must demonstrate "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 58, 106 S. Ct. 366, 370, 88 L. Ed. 2d 203 (1985). In the context of a petitioner who seeks to reinstate (rather than withdraw) a plea offer, the petitioner must show that there is a reasonable probability that he or she would have accepted the plea had it been properly communicated to him or her. Such a "reasonable probability" is defined as a "probability sufficient to undermine confidence in the outcome" of the proceedings. Henley, 960 S.W.2d at 579 (quoting Strickland, 466 U.S. at 694, 104 S. Ct. at 2068, 80 L. Ed. 2d at 698); see also Goad, 938 S.W.2d at 370.

In Harris, trial counsel failed to communicate to the defendant the offer made by the State. 875 S.W.2d at 663. The defendant went to trial ignorant of the State's offer and was convicted. He was sentenced to a prison term far in excess of the uncommunicated plea offer. Id. The State, conceding deficient representation, contended that no prejudice was shown because the record established that the trial judge would not have accepted the plea bargain if submitted. Id. at 664.

In Harris, we affirmed the finding of deficient representation and held that the defendant's ignorance of the plea offer so undermined confidence in the outcome of the prosecution as to demonstrate sufficient prejudice to satisfy the second prong of Strickland. Id. at 665-66. In the case under submission, however, the record includes testimony that when Garrison learned of the offer during jury deliberations, he indicated that he would not have accepted it, and the trial court apparently accredited that testimony. Thus, there is no reasonable probability that DePersio's failure to convey the State's offer affected the outcome of the plea process. Under such facts, this Court cannot find that the prejudice prong has been satisfied, despite DePersio's initial failure to communicate the offer. Accordingly, the Court of Criminal Appeals's judgment remanding the case for the resumption of the plea negotiations is reversed.

## B. Jury Instructions

Under the United States and Tennessee Constitutions, a defendant has a constitutional right to trial by jury. U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed . . . ."); Tenn. Const. Art. I, § 6 ("[T]he right of trial by jury shall remain inviolate, and no religious or political test shall ever be required as a qualification for jurors."). In Tennessee, this right dictates that all issues of fact be tried and determined by twelve jurors. See State v. Bobo, 814 S.W.2d 353, 356 (Tenn. 1991); Willard v. State, 130 S.W.2d 99 (Tenn. 1939). Thus, it follows that a defendant has a right to a correct and complete charge of the law, so that each issue of fact raised by the evidence will be submitted to the jury on proper instructions. See State v. Forbes, 793 S.W.2d 236, 249 (Tenn. 1990).

Garrison was indicted for solicitation to commit first degree murder. By statute:

> Whoever, by means of oral, written or electronic communication, directly or through another, **intentionally commands**, requests **or hires** another to commit a criminal offense, or attempts to command, request or hire another to commit a criminal offense, with the intent that the criminal offense be committed, is guilty of the offense of solicitation.

Tenn. Code Ann. § 39-12-102 (1997) (emphasis added). The trial court elided the jury instruction by omitting the statutory language which appears above in bold type.[6] As elided, the instruction given to the jury was as follows:

> That the Defendant . . . requested another to commit the offense of first degree murder . . . with the intent that the offense of first degree murder be committed.

Relying on State v. Lee,[7] the Court of Criminal Appeals construed the statute defining solicitation to require that for any solicitation charge, whether it be by "command, request or hire," the jury must find both an intent that a criminal offense be committed by another and an intentional communication of that intent to another. It found that the jury charge omitted an instruction that the request itself be intentional, an essential element of the offense. The intermediate appellate court found the error particularly egregious in view of the defendant's theory that his "request" was not serious and held that the error required a new trial.

---

[6] The trial court omitted this language because it found that Garrison never paid the initial $500 fee that had been agreed upon for the alleged murder-for-hire, and thus there was no completed contract of hire between Garrison and the Tennessee Bureau of Investigation agent.

[7] 618 S.W.2d 320, 323-24 (Tenn. Crim. App. 1981).

We agree with the intermediate appellate court that the clear language of the statute evinces a legislative intent to require both an intent to solicit and an intent that the crime solicited be committed.[8] This conclusion is supported by the sentencing commission comments, which state that under this section, "the defendant must intentionally try to enlist another in criminal activity and must intend that the offense be committed." Tenn. Code Ann. § 39-12-102, sentencing comm'n cmts. (1997). This interpretation also furthers the purpose of a "solicitation" statute, which is to punish those who sincerely enlist others in criminal deeds. Id.

Having found that Garrison's rights were violated because the trial court's charge omitted an essential element of the offense, the next question is whether the error requires a reversal of the conviction. The Tennessee Rules of Appellate Procedure provide that a final judgment "shall not be set aside unless, considering the whole record, error involving a substantial right more probably than not affected the judgment or would result in prejudice to the judicial process." Tenn. R. App. P. 36. The history of this "harmless error doctrine" and its general application to constitutional errors has been thoroughly documented by this Court. See e.g., Momon v. State, 18 S.W.3d 152 (Tenn. 1999); State v. Williams, 977 S.W.2d 101, 104 (Tenn. 1998). Of note for purposes of this case is the established principle that "a very limited class of errors have been found to be 'structural,' and subject to automatic reversal."[9] Momon v. State, 18 S.W.3d at 152. At issue is whether the

---

[8] We find the language of the statute to be unambiguous. The foundation of statutory construction is to ascertain and give effect to the intention and purpose of the legislature. Worrall v. Kroger Co., 545 S.W.2d 736 (Tenn. 1977). This legislative intent or purpose is to be ascertained primarily from the natural and ordinary meaning of the language used, without forced or subtle construction that would limit or extend the meaning of the language. "Where the language contained within the four corners of a statute is plain, clear, and unambiguous and the enactment is within legislative competency, 'the duty of the courts is simple and obvious, namely, to say sic lex scripta, and obey it.'" Carson Creek Vacation Resorts, Inc. v. State, Dept. of Revenue, 865 S.W.2d 1, 2 (Tenn. 1993) (quoting Miller v. Childress, 21 Tenn. (2 Hum.) 319, 321-22 (1841)).

[9]
> Despite the strong interests that support application of the harmless error doctrine, the United States Supreme Court and this Court have consistently held that some errors defy harmless error analysis and require reversal. The cases in which the United States Supreme Court and this Court have refused to apply the harmless error doctrine involve errors that are "structural defects in the constitution of the trial mechanism." These errors have an impact upon "[t]he entire conduct of the trial from beginning to end." Stated another way, "these errors deprive defendants of 'basic protections' without which 'a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence . . . and no criminal punishment may be regarded as fundamentally fair.'"

Momon v. State, 18 S.W.3d at 165 (Tenn. 1999)(citations omitted). The United States Supreme Court has noted that structural error analysis is appropriate only in a "very limited class of cases," typically where the error has compromised the integrity of the trial process. See Johnson v. United States, 520 U.S. 461, 468, 117 S. Ct. 1544, 137 L. Ed. 2d 718 (1997) (citing Gideon v. Wainwright, 372 U.S. 335, 83 S. Ct. 792, 9 L. Ed. 2d 799 (1963) (complete denial of the assistance of counsel); Tumey v. Ohio, 273 U.S. 510, 47 S. Ct. 437, 71 L. Ed. 749 (1927) (biased trial judge); Vasquez v. Hillery, 474 U.S. 254, 106 S. Ct. 617, 88 L. Ed. 2d 598 (1986) (racial discrimination in selection of grand jury); McKaskle v. Wiggins, 465 U.S. 168, 104 S. Ct. 944, 79 L.Ed. 2d 122 (1984) (denial of self-representation at trial); Waller v. Georgia, 467 U.S. 39, 104 S. Ct. 2210, 81 L. Ed. 2d 31 (1984) (denial of public trial); Sullivan v. Louisiana, 508 U.S. 275, 113 S. Ct. 2078, 124 L. Ed. 2d 182 (1993) (defective reasonable-doubt instruction)).

trial court's error in omitting an essential element of an offense from the jury charge is structural.

Recently, in Neder v. United States, the United States Supreme Court addressed this issue under the United States Constitution and determined that such omissions are not structural and thus are subject to harmless error analysis. 527 U.S. 1, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999). The Court stated:

> [A] jury instruction that omits an element of the offense . . . differs markedly from the constitutional violations we have found to defy harmless-error review. Those cases, we have explained, contain a "defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself." Such errors "infect the entire trial process" and necessarily render a trial fundamentally unfair. Put another way, these errors deprive defendants of "basic protections" without which "a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence . . . and no criminal punishment may be regarded as fundamentally fair.
>
> Unlike such defects as the complete deprivation of counsel or trial before a biased judge, an instruction that omits an element of the offense does not necessarily render a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence.

Id. at 8-9 (citations omitted). Key to the Supreme Court's conclusion that harmless error analysis was appropriate was its observation that "Neder was tried before an impartial judge, under the correct standard of proof and with the assistance of counsel; [and] a fairly selected, impartial jury was instructed to consider all of the evidence and argument in respect to Neder's defense . . ." Id. at 9.

Our Court has applied a similar analysis when interpreting the Tennessee Constitution. In State v. Teel, a defendant convicted of felony murder asserted that the trial court's failure to instruct the jury on the definition of rape–the felony supporting the felony murder conviction–constituted reversible error. 793 S.W.2d 236, 249 (Tenn. 1990). Although we noted at that time that "[t]he law is unsettled as to whether harmless error analysis is available when a trial court fails to instruct on an essential element of an offense," we concluded that harmless error analysis does apply to the failure to define a separate felony that is an essential element of the felony with which the defendant is charged. Id. On the other hand, in State v. Bobo, we concluded that the trial court's decision to substitute a juror with an alternate after the alternate jurors had been discharged, the case had been submitted, and deliberations had begun, without instructions to the jury to begin deliberations anew,

was a "[defect] in the structure of the trial mechanism and thus [defies] analysis by harmless error standards." 814 S.W.2d 353, 356-58 (Tenn. 1991).

In this case, unlike Bobo, the integrity of the jury as a fact-finding body was not disturbed. Rather, as in Neder and Teel, an impartial jury was required to make its findings pursuant to imperfect instructions by the trial court. We do not find this type of error to be a defect in the structure of the trial mechanism that would "necessarily render a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence." Thus, we hold that harmless error analysis is appropriate when evaluating omissions of an essential element of an offense from the jury charge.

Applying that analysis in this case, we find that the trial court's error was harmless beyond a reasonable doubt. The Court of Criminal Appeals found the error to be reversible in light of Garrison's defense that he was not sincere when he requested that the witness be murdered. The court found that the question whether Garrison intentionally engaged in solicitation was an issue fundamental to his defense, and the trial court's failure to instruct the jury on this intent element thus undermined the reliability of the jury's verdict. However, the decision of the Court of Criminal Appeals misconstrues the statute's two-pronged intent requirement. Garrison's defense actually focuses upon the second prong, the intent that the crime solicited actually be committed. By contending that he engaged in the conversations as a pretext, Garrison was in essence asserting that although he requested that the witness be murdered, he never intended that the murder actually be committed. Garrison never argued that he lacked the requisite intent to engage in a conversation with the undercover agent, and so the first intent requirement, the intent to solicit, effectively has been conceded. Although the second intent requirement, the intent that the crime actually be committed, was contested at trial, the jury found against Garrison on this point. Because the omitted intent requirement was not contested at trial and essentially has been conceded by Garrison, we find that the trial court's failure to instruct on the first intent requirement had no impact on the jury's verdict. Therefore, the error was harmless beyond a reasonable doubt, and the judgment of conviction must be affirmed.

### III. Conclusion

As to trial counsel's failure to inform the defendant of the plea offer made by the State, we agree with the Court of Criminal Appeals that such conduct satisfied the first prong of Strickland. We do not conclude, however, that such failure, alone, demonstrates prejudice to the extent necessary to satisfy the second (prejudice) prong of Strickland. Accordingly, we hold that the defendant has not proven ineffective assistance of counsel under the requirements of Strickland.

With regard to the issue concerning the jury instructions, we conclude that the trial court's omission of the statutory language constitutes harmless error. Thus, the judgment of the Court of Criminal Appeals is reversed, and the case is dismissed.

Costs are taxed to John C. Garrison.

_____
ADOLPHO A. BIRCH, JR., JUSTICE