IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs February 14, 2006

## STATE OF TENNESSEE v. WILLIAM THOMAS BRANCH

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2003-D-3001    Mark J. Fishburn, Judge**

---

**No.  M2005-01125-CCA-R3-CD - Filed July 10, 2006**

---

Following a jury trial, Defendant, William Thomas Branch, was found guilty of the offense of rape of a child, a Class A felony.  The trial court sentenced Defendant as a Range I, standard offender, to fifteen years.  In his appeal, Defendant argues that the evidence is insufficient to support his conviction, and that the trial court erred in its instructions to the jury.  After a thorough review of the record, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, J., joined; DAVID H. WELLES, J., concurred in results only.

Ross E. Alderman, District Public Defender; Emma Rae Tennent, Assistant Public Defender; Clark B. Thornton, Assistant Public Defender; and Katie Weiss, Assistant Public Defender, Nashville, Tennessee, for the appellant, William Thomas Branch.

Paul G. Summers, Attorney General and Reporter; Jennifer L. Bledsoe, Assistant Attorney General; Victor S. (Torry) Johnson III, District Attorney General; and Jeffrey Devasher, Assistant District Attorney General, for the appellee, the State of Tennessee.

### OPINION

## I. Background

The minor victim will be referred to by his initials, C.G.  Taronda Garrett, the victim's mother, testified that C.G. is an only child, and Ms. Garrett often arranged time for C.G. to visit family members so that he could play with other children.  Ms. Garrett said that her Uncle Carl and Defendant, her uncle's long-term partner, lived next door to her grandmother.  On the day of the offense, Ms. Garrett and C.G. spent the day with Ms. Garrett's grandmother, and C.G. played with Defendant's grandsons, Devonta and Roderrick Branch.  Ms. Garrett said she had plans to attend a party that night, and C.G. asked her if he could spend the night at his great-uncle's house so that he

could continue playing with Defendant's grandsons. Ms. Garrett said she agreed, although she thought at the time that her uncle was going to be home that night.

Ms. Garrett said that she arrived at her grandmother's house the next morning before 11:00 a.m., and C.G. was playing outside. Ms. Garrett, C.G., and Ms. Garrett's grandmother attended church services, and then Ms. Garrett and C.G. returned to their home. Ms. Garrett said that she did not notice anything wrong with her son. That afternoon, Ms. Garrett received a telephone call from Devonta's and Roderrick's mother, Yolanda Branch, who told Ms. Garrett that her son, Devonta, had described an incident involving Defendant and C.G. which had occurred the night before. Ms. Garrett asked C.G. to tell her what happened. After her conversation with C.G., Ms. Garrett called C.G.'s father and other family members to ask their advice about how to handle the situation. On Monday, Ms. Garrett reported the incident to the police.

C.G., who was nine years old at the time of trial, testified that he was seven years old and in the first grade when the offense occurred. C.G. said that Defendant lived with C.G.'s great-uncle, and C.G. spent the night at his great-uncle's house on the day of the offense so that he could play with Defendant's grandsons. The children watched cartoons on the television set in the living room of Defendant's house. C.G. said that Defendant put a movie into the VCR about "two boys kissing and stuff." C.G. told Defendant, "that's nasty," because he did not like the movie. Defendant sat on the couch and watched the movie.

C.G., Devonta, and Roderrick went into Defendant's bedroom and found some condoms. C.G. said that he did not know what condoms were at the time. He and his friends filled some of the condoms up with water, turning them into water balloons. C.G. said that at some point that afternoon or evening, Defendant laid down on his bed, pulled his pants down, and put a condom on his "private part." C.G. said that Defendant moved his hand up and down on his "private part" while C.G. watched. C.G. said that he did not know what Defendant was doing.

Later, C.G., Devonta, Roderrick, and Defendant were in the living room. Defendant was sitting on the couch. C.G. said that he stood in front of Defendant and pulled his pants down. C.G. said that he wanted to see what "it" felt like because he had seen "it" on the movie. C.G. said that Defendant "sucked [his] private part" for a second, and then C.G. backed away from Defendant because it felt "nasty." C.G. said that he "didn't like it." C.G. said that Defendant did not touch with his hands either himself or C.G. during the incident. C.G. then clarified that Defendant masturbated in his bedroom after the incident of fellatio.

Defendant told C.G. the next morning not to tell his mother what happened. C.G. said that he did not talk to his mother about the incident until after Ms. Branch telephoned.

On cross-examination, C.G. said that he did not remember talking to a counselor about the incident, or telling the counselor that Devonta or Roderrick, instead of Defendant, put the movie into the VCR . He also did not remember telling the counselor that Defendant had put his mouth on Devonta's and Roderrick's private parts as well as C.G.'s. C.G. denied at trial that Defendant had

inappropriately touched anyone else the night of the offense, but he said that the other two boys were in the living room when the incident occurred.

Brett Gipson, a detective with the Metro Nashville Police Department, testified that he was assigned to investigate the incident. Detective Gipson interviewed Devonta and Roderrick Branch at their respective schools, but he did not interview C.G. Detective Gipson said that the Department of Children's services routinely interviewed victims as young as C.G. During a search of Defendant's home, police officers discovered two movies depicting homosexual activity, and both used and packaged condoms, but no physical evidence such as semen. Detective Gipson interviewed Defendant in his unmarked patrol car while other officers searched his house. Detective Gipson said that he read Defendant his *Miranda* rights, and Defendant executed a written waiver of those rights. Defendant's tape recorded statement was played to the jury.

In his statement, Defendant initially denied that he had inappropriately touched C.G. Defendant said that he had drunk "quite a bit," "up into a half-gallon" of Canadian Mist liquor, that night and did not remember anything that happened. Defendant did not remember putting a movie into the VCR or masturbating in front of C.G. Defendant, however, acknowledged that his grandsons and C.G. played with water-filled condoms that night. Ultimately, Defendant said, "This is the first time anything like that happened to me," and "it's not going to happen anymore." Defendant acknowledged that the incident "was a spur-of-the-moment thing." He stated that he knew the incident happened, but he could not remember the details.

Detective Gipson said that C.G. did not undergo a physical examination because the offense was reported more than thirty-six hours after it occurred, and C.G. did not display any signs of physical injury.

Carlin Giles, a counselor with the Nashville Child Advocacy Center at the time of the offense, was called as a defense witness. Ms. Giles testified that she interviewed C.G. about a week after the offense. Ms. Giles said that she avoided the use of leading questions during a minor victim's forensic interview, and she encouraged the child to describe what happened in his or her own words. Ms. Giles said that C.G. initially portrayed himself as a witness to the event rather than a participant, but he eventually disclosed that Defendant had "sucked" his private part. Ms. Giles said that she was surprised the seven-year-old victim used the word "sucked," but in other respects, C.G. did not display a significant understanding about what had happened to him. Ms. Giles acknowledged that C.G. told her that Defendant had performed oral sex on Devonta, and that Roderrick put the movie into the VCR. Ms. Giles acknowledged that her interview summary did not reflect that C.G. had disclosed to her that Defendant masturbated in front of him.

## II. Sufficiency of the Evidence

Defendant's challenge to the sufficiency of the convicting evidence essentially questions C.G.'s credibility as a witness based on the inconsistencies between his testimony at trial and his responses during Ms. Giles' interview. When a defendant challenges the sufficiency of the

convicting evidence, we must review the evidence in a light most favorable to the prosecution in determining whether a rational trier of fact could have found all the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S.307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979). Once a jury finds a defendant guilty, his or her presumption of innocence is removed and replaced with a presumption of guilt. *State v. Black*, 815 S.W.2d 166, 175 (Tenn. 1991). The defendant has the burden of overcoming this presumption, and the State is entitled to the strongest legitimate view of the evidence along with all reasonable inferences which may be drawn from that evidence. *Id.*; *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). The jury is presumed to have resolved all conflicts and drawn any reasonable inferences in favor of the State. *State v. Sheffield*, 676 S.W.2d 542, 547 (Tenn. 1984). Questions concerning the credibility of witnesses, the weight and value to be given the evidence, and all factual issues raised by the evidence are resolved by the trier of fact and not this court. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997). These rules are applicable to findings of guilt predicated upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990).

Defendant was convicted of the offense of rape of a child which is defined as "the unlawful sexual penetration of a victim by the defendant, or the defendant by the victim, if such victim is less that thirteen (13) years of age." T.C.A. § 39-13-522(a). "Sexual penetration" includes fellatio, "however slight." *Id.* § 39-13-501(7).

We acknowledge that Ms. Giles' testimony highlighted certain inconsistencies between C.G.'s description of the events leading up to the offense during his interview and the description presented at trial. However, all questions involving the credibility of the witness, and the resolution of any conflicts, are left to the trier of fact. *State v. Pappas*, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). The jury is in a position to view a witness, hear his or her testimony, and observe the witness's demeanor on the stand. By its verdict, the jury obviously accredited the victim's testimony. Despite certain inconsistencies in C.G.'s description of the events that night, the victim clearly testified that Defendant performed oral sex on him in the Defendant's living room, and that he was seven years old at the time of the offense. C.G.'s testimony at trial, together with Defendant's statement to the police, provide more than sufficient evidence to sustain the conviction.

Based on our review of the record, we conclude that a rational trier of fact could conclude beyond a reasonable doubt that Defendant is guilty of the offense of rape of a child. Defendant is not entitled to relief on this issue.

### III. Jury Instructions

Defendant argues that the trial court's instructions to the jury failed to clearly define the *mens rea* requirement for the sexual penetration element of the offense of rape of a child. Defendant contends that by including the mental state of recklessness in its charge, the instructions served to lessen the State's burden of proof because the element of sexual penetration requires either an intentional or a knowing *mens rea*. The State argues that Defendant has waived this issue by not

objecting to the trial court's jury instructions, and by failing to raise the issue of improper jury instructions in his motion for new trial. Regardless of whether or not Defendant waived this issue, we find no error in the trial court's instructions to the jury in the case *sub judice*.

In criminal cases, a defendant has a right to a correct and complete charge of the law. *State v. Garrison*, 40 S.W.3d 426, 432 (Tenn. 2000). The material elements of the charged offense should be described and defined in connection with that offense. *State v. Ducker*, 27 S.W.3d 889, 899 (Tenn. 2000); *State v. Craven*, 764 S.W.2d 754, 756 (Tenn. 1989). The failure to do so deprives the defendant of the constitutional right to a jury trial and subjects the erroneous jury instruction to harmless error analysis. *Garrison*, 40 S.W.3d at 433-34. A jury instruction, however, must be reviewed in its entirety and read as a whole rather than in isolation. *State v. Leach*, 148 S.W.3d 42, 58 (Tenn. 2004). "An instruction should be considered prejudicially erroneous only if the jury charge, when read as a whole, fails to fairly submit the legal issues or misleads the jury as to the applicable law." *State v. Faulkner*, 154 S.W.3d 48, 58 (Tenn. 2005) (citing *State v. Vann*, 976 S.W.2d 93, 101 (Tenn. 1998)).

The trial court in the case *sub judice* instructed the jury as follows:

Count one, rape of a child; any person who commits the offense of rape of a child is guilty of a crime. For you to find the defendant guilty of this offense, the State must have proven beyond a reasonable doubt the existence of the following essential elements: one, that the defendant had unlawful sexual penetration of [C.G.] or [C.G.] had unlawful sexual penetration of the defendant; and two, that [C.G.] was less than thirteen years of age; and three, that the defendant acted either intentionally, knowingly or recklessly.

The trial court then defined the culpable mental states of intentional, knowingly and recklessly as follows:

Intentionally, as used in the offense of rape of a child, means that the defendant acts with a conscious objective or desire to engage in sexual conduct with [C.G.] and that the defendant's acts [sic] was a conscious objective or desire that a penetration result from the sexual contact – conduct with [C.G.].

Knowingly, as used in the offense of rape of a child, means that the defendant was aware that he was engaging in sexual conduct with [C.G.], that he is aware his conduct is reasonably certain to result in the penetration of [C.G.], or the penetration of him by [C.G.], and that [C.G.] was less than thirteen years of age.

Recklessly, as used in the offense of rape of a child, means that the defendant acts recklessly when he is aware of, but consciously disregards a substantial and unjustifiable risk that [C.G.] is less than thirteen years of age, and that penetration will occur as a result of the sexual conduct.

Relying primarily on *State v. Weltha Womack*, No. E2003-02332-CCA-R3-CD, 2005 WL 17428 (Tenn. Crim. App., at Knoxville, Jan. 4, 2005), *no perm. to appeal filed*, Defendant argues that the trial court's instructions erroneously failed to distinguish between the separate mental states required for the element of sexual penetration and the element of the victim's age. In *Weltha Womack*, the trial court included the mental state of recklessness within its instructions to the jury on the offense of aggravated rape. Because aggravated rape is a nature of the conduct offense requiring proof that the defendant acted either intentionally or knowingly, the *Womack* court concluded that the inclusion of recklessness in the definition of applicable mental states lessened the State's burden of proof as to the element of sexual penetration. Under the facts presented in that case, the *Womack* court concluded that the instruction error was not harmless beyond a reasonable doubt and reversed the defendant's conviction.

We begin by noting that the offense of rape of a child does not specify a mental state in its statutory definition. *See* T.C.A. § 39-13-522. Where a statutory definition "does not plainly dispense with a mental element, intent, knowledge or recklessness suffices to establish the culpable mental state." T.C.A. § 39-11-301(c). *See, e.g. State v. Barney*, 986 S.W.2d 545, 550 (Tenn. 1999) ("Rape of a child requires sexual penetration of the victim, and the mental state required may range from intentional to knowing or reckless."); *State v. Hill*, 954 S.W.2d 725, 729 (Tenn. 1997) ("Obviously, the act for which the defendant is indicted, 'unlawfully sexual[ly] penetrat[ing]' a person under the age of thirteen, is committable only if the principal actor's *mens rea* is intentional, knowing or reckless").

In Tennessee, the culpable mental states are defined in relation to three possible conduct elements of an offense, which may be found singly or in combination with one another within an offense's statutory definition. *See* T.C.A. § 39-11-302. These "conduct elements" include the nature of the conduct, the circumstances surrounding the conduct, and the result of the conduct. *See* T.C.A. § 39-11-201(a)(1). The first element, nature of the conduct, involves the proscribed act or the manner in which the defendant acts; the second element, circumstances of the offense, refers to a situation which relates to the defendant's culpability; and the third element, result of the conduct, requires that the defendant's conduct must at least be a physical cause of the harmful result. *Weltha Womack*, 2005 WL 17428, at *8.

Based upon the statutory definition of culpable mental states, "intentional" refers to the nature of the conduct or to a result of the conduct; "knowing" refers to the nature of the conduct, the circumstances surrounding the conduct, or the result of the conduct; and "reckless" refers to the result of the conduct or to the circumstances surrounding the conduct, but not to the nature of the conduct. *See* T.C.A. § 39-11-302(a), (b), and (c).

In *State v. Chester Wayne Walters*, No. M2003-03019-CCA-R3-CD, 2004 WL 2726034, at *13 (Tenn. Crim. App., at Nashville, No. 30, 2004), *perm. to app. denied* (Tenn. Mar. 21, 2005) a panel of this Court concluded that the offense of rape of a child contains all three conduct elements. *See also State v. Leon Tucker*, No. M2005-00839-CCA-R3-CD, 2006 WL 547991, at *12 (Tenn. Crim. App., at Nashville, Mar. 7, 2006), *no perm. to appeal filed*. The element of unlawful sexual

penetration contains two conduct elements: nature of the conduct and result of the conduct. *Chester Wayne Walters*, 2004 WL 2726034, at *13. A victim's age is a circumstance surrounding the conduct. *Id.* (citing *State v. Deji A. Ogundiya*, No. M2002-03099-CCA-R3-CD, 2004 WL 315138, at 6 (Tenn. Crim. App., at Nashville, Feb. 19, 2004), *no perm. to appeal filed*). Applying the foregoing to the case *sub judice*, the requisite culpable mental states for unlawful sexual penetration, both a nature-of-conduct and result-of-conduct offense, is either intentional or knowing; the requisite culpable mental states pertaining to the of victim's age, a circumstance of the offense, are knowing or reckless.

Based on the foregoing, we find no error in the trial court's instructions to the jury on the offense of rape of a child. The initial charge to the jury setting forth the material elements of the offense of rape of a child did not assign a specific mental state to the elements. The trial court separately defined the mental states of intentionally, knowingly, and recklessly and correctly identified the material element to which the individual mental state related. The instruction specifically limited the reckless *mens rea* to the circumstances of the offense. In the case *sub judice*, the entire charge to the jury on the offense of rape of a child fairly defined the issues of law and did not mislead the jury. *See Frederick Leon Tucker*, 2006 WL 547991, at *13 (finding no error in trial court's instructions to the jury on the offense of rape of a child when no specific mental state was assigned to the definition of rape of child, and the trial court separately defined the mental states of intentionally, knowingly, and recklessly). Defendant is not entitled to relief on this issue.

## CONCLUSION

After a thorough review, we affirm the judgment of the trial court.

_____
THOMAS T. WOODALL, JUDGE