# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs May 14, 2014

## STATE OF TENNESSEE v. STEPHEN RENE MORRIS

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2013-1-145     James C. Beasley, Judge**

---

**No. M2013-01265-CCA-R3-CD - Filed November 12, 2014**

---

The defendant, Stephen Rene Morris, was convicted of Class A misdemeanor assault and sentenced to eleven months and twenty-nine days, which was suspended to supervised probation. The defendant now appeals his conviction asserting: (1) that the trial court erred by instructing the jury that misdemeanor assault is a lesser included offense of Class E felony abuse of an adult, the original charge; and (2) that the evidence is insufficient to support his conviction. Following review of the record, we conclude that the trial court did err in instructing the jury, but the resulting error was harmless beyond a reasonable doubt. Additionally, we conclude that the evidence is sufficient to support the conviction. As such, the judgment of the trial court is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the Court, in which JAMES CURWOOD WITT, JR., and ROGER A. PAGE, JJ., joined.

Ross Alderman, District Public Defender; Emma Rae Tennent, Assistant Public Defender (on appeal); Melissa Harrison and Sarah King, Assistant Public Defenders (at trial), for the appellant, Stephen Rene Morris.

Robert E. Cooper, Jr., Attorney General and Reporter; Tracy L. Alcock, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Ben Ford, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## Procedural History

The defendant was convicted in this case of assaulting his ninety-one-year-old grandfather. The victim suffered from advanced-stage Alzheimers and sometimes did not know or recognize those around him. Following the death of the victim's wife, the defendant's grandmother, approximately three weeks before this incident, the defendant and his girlfriend, Ms. Tina Flippo, had moved in to help care for the victim. The pair tended to the victim's daily needs and provided the care necessary to allow him to remain in the home.

Mr. Michael Hudson lived behind the victim, and their backyards bordered each other, with only a chain-link fence separating them. On July 26, 2010, Mr. Hudson and his girlfriend, Ms. Debbie Whitney, were outside working in their yard. Ms. Whitney heard some arguing and a commotion in the victim's backyard and got Mr. Hudson from inside the barn. Mr. Hudson heard "a lot of commotion" and "cussing," and then he heard someone call out "help me." Mr. Hudson saw the defendant hit the victim in the back of the neck, and he yelled at the defendant to stop. The victim fell to the sidewalk. Mr. Hudson told Ms. Whitney to call 911, and he got in his car and drove to the victim's next-door-neighbor's, Mr. Brandon Proctor's, house to get assistance. Ms. Whitney made the call and remained on the line with police relaying the events as they unfolded. Mr. Hudson and Mr. Proctor then proceeded to the victim's backyard. When they arrived moments later, they found the victim still lying on the sidewalk, and the defendant was inside the house or garage with the door open. The victim was bleeding and had a bruise to his facial/head area. There appeared to be a cut on the left side of his neck.

Mr. Hudson confronted the defendant and asked him if he had hurt the victim. The defendant responded, "[Y]eah . . . I did it and he started it." At the same time, the defendant began aggressively walking toward Mr. Hudson, and Mr. Hudson hit him in the face, busting his eyes, because he had just seen the defendant "knock a ninety-one -year-old man down." Mr. Hudson turned to offer the victim aid, and Mr. Procter stood guard over the defendant. The victim did not say anything to the men.

The police and an ambulance soon arrived. They observed that the victim, still lying in the driveway, had a fresh cut on his left ear, a swollen left eye, discoloration on his cheeks, and bruising on his hands and arms. Officers indicated that the victim was "really kind of out of it." He was transported to the hospital. The defendant had cuts on both of his eyebrows, and he smelled of and appeared to be under the influence of alcohol. The responding officers spoke to the witnesses gathered at the scene. Mr. Hudson told the police about hearing the victim crying for help and that he had witnessed the defendant knock the victim to the ground. Based upon the information they obtained, the police developed the defendant as the primary aggressor in the assault of the victim and took him into custody.

The officers also noticed that the defendant smelled of and appeared to have been drinking alcohol. The defendant told police that the victim had fallen and that he was attempting to help him up. The defendant was first taken to a local hospital for treatment prior to being taken to the Criminal Justice Center. There he told officers that he and the victim had argued and that the victim had attacked him.

Mr. Proctor also related an event that had occurred earlier in the day. According to him, when he came home for lunch, he saw the defendant and the victim both lying on the ground in the backyard. He approached them, and he helped the defendant get the victim into a chair. He further related that he believed that he smelled alcohol on the defendant at the time.

Based upon the above, the defendant was charged by information for adult abuse.[1] A jury trial was held at which multiple witnesses testified to the above facts, with some slight variations in the details. The defendant testified on his own behalf as well. He testified that he and Ms. Flippo had moved in with the victim after the death of his grandmother to care for the victim's daily needs. The defendant stated that on the day of the incident, he and the victim had been working outside in the backyard. The defendant testified that the victim loved to be outside, although he could no longer remain outdoors alone. The defendant related that just earlier in the day, the victim had fallen and was unable to get up unassisted. At the victim's request, the defendant laid down on the grass with the victim. Afterwards, Mr. Proctor came over and assisted the defendant with getting the victim into a chair. The defendant acknowledged that he had drank two rum and cokes over the course of the day, but he denied that he was intoxicated.

According to the defendant, later that same afternoon, the defendant and the victim were again in the yard. The victim began to get too hot, and the defendant persuaded him to go back inside. However, before they reached the house, the victim started to fall, calling out, "[H]elp me." The defendant said that he attempted to stop or cushion the victim's fall, but he was unable to catch him before he hit the ground. The defendant stated that, as he was leaning over to help the victim, Mr. Hudson came running up the driveway and attacked him.

The defendant's girlfriend, Ms. Flippo, also testified. Although she was not at home during the event, she confirmed that the defendant and the victim had a warm and loving relationship. She testified that the victim was like a father to the defendant and that the defendant would never hurt the victim. Ms. Flippo testified that she was the one who picked

---

[1] The defendant had originally been indicted for abuse of an impaired adult. In a prior trial, he was acquitted of that offense, as well as attempted abuse of an impaired adult. However, the jury was unable to reach a verdict with regard to the lesser included offense of abuse of an adult.

up the victim from the hospital and that he appeared in good spirits. He was given no discharge instructions upon his release regarding any wound care.

At the close of proof, the defendant requested that the trial court not charge the jury with any lesser included offenses. The request was denied, and the jury, thereafter, convicted the defendant of the lesser included offense of misdemeanor assault. The defendant was later sentenced to an eleven month and twenty-nine day term to be served on supervised probation. Following the denial of his motion for new trial, the defendant filed timely notice of appeal with this court.

## Analysis

On appeal, the defendant has raised two issues for our review. First, he contends that the trial court erred by instructing the jury as to the lesser included offense of assault. Next, he challenges the sufficiency of the evidence of his conviction.

## I. Jury Instruction

The defendant argues that the trial court improperly instructed the jury that assault was a lesser included offense of abuse of an adult. Specifically, he contends that the court erred because the charge of assault contains a *mens rea* requirement of "intentionally" that is not included in the definition of abuse of an adult. The State concedes that the jury was erroneously instructed that intentional assault was a lesser included offense but argues that the error was harmless because it did not affect the verdict.

In criminal cases, the trial court must give "a complete charge of the law applicable to the facts of the case and the defendant has a right to have every issue of fact raised by the evidence and material to his defense submitted to the jury upon proper instructions by the judge." *State v. Thompson*, 519 S.W.2d 789, 792 (Tenn. 1975). An erroneous jury instruction deprives the defendant of the constitutional right to a jury trial and is subject to a harmless error analysis. *State v. Garrison*, 40 S.W.3d 426, 433-34 (Tenn. 2000). Issues involving jury instructions present a mixed question of law and fact, which this court reviews de novo with no presumption of correctness. *State v. Banks*, 271 S.W.3d 90, 124 (Tenn. 2008)

Tennessee Code Annotated section 40-18-110(f)(1) (2012) provides that "[a]n offense is a lesser included offense if all of its statutory elements are included within the statutory

elements of the offense charged."[2]  An offense is lesser included "if the elements of the greater offense . . . include, but are not congruent with, all the elements of the lesser." *State v. Broderick Devonte Fayne*, — S.W.3d —, No. W2012-01488-SC-R11-CD, 2014 WL 5430049, at \*5 (Tenn. Oct. 27, 2014) (citations omitted).  The crucial inquiry "is whether 'the elements of the lesser offense [are] a subset of the elements of the charged offense.'" *Id.* (quoting *State v. Ely*, 48 S.W.3d 710, 718 (Tenn. 2001) (alteration in original).  In order to determine whether assault is a lesser included offense of abuse of an adult, we must analyze whether the elements of assault "fall completely within the elements" of abuse of an adult. *Id.*

Tennessee Code Annotated section 71-6-117(a) provides that "[i]t is an offense for any person to knowingly, other than by accidental means, abuse, neglect, or exploit any adult within the meaning of this part."  Tennessee Code Annotated section 71-6-102(1)(A) defines "abuse or neglect" as:

> the infliction of physical pain, injury, or mental anguish, or the deprivation of services by a caretaker that are necessary to maintain the health and welfare of an adult or a situation in which an adult is unable to provide or obtain the services that are necessary to maintain the person's health or welfare.

The statute further defines "adult" as:

> a person eighteen (18) years of age or older who because of a mental or physical dysfunctioning or advanced age is unable to manage such person's own resources, carry out the activities of daily living, or protect such person from neglect, hazardous or abusive situations without assistance from others and who has no available, willing, and responsibly able person for assistance and who may be in need of protective services.

The offense contains three elements: (1) that the defendant act "knowingly, other than by accidental means;" (2) inflict physical pain or injury; and (3) against a victim who is eighteen years of age or older who cannot care for themselves due to a physical or mental impairment.

Under Tennessee Code Annotated section 39-13-101(a)(1), "[a] person commits

---

[2] As our supreme court recently observed, the 2009 amendment to Tennessee Code Annotated section 40-18-110(f)(1) codified section (a) of the *Burns* test, and the two are identical. *Broderick Devonte Fayne*, — S.W.3d —, No. W2012-01488-SC-R11-CD, 2014 WL 5430049, at \*5 n.5 (Tenn. Oct. 27, 2014).  As a result, the analyses of the two sections are the same, so an offense that would have been a lesser included under part (a) of *Burns* is also a lesser included under § 40-18-110(f)(1).

assault who intentionally, knowingly, or recklessly causes bodily injury to another." "Intentionally," "knowingly," and "recklessly" are defined as follows:

(a) "Intentional" refers to a person who acts intentionally with respect to the nature of the conduct or to a result of the conduct when it is the person's conscious objective or desire to engage in the conduct or cause the result.

(b) "Knowing" refers to a person who acts knowingly with respect to the conduct or to circumstances surrounding the conduct when the person is aware of the nature of the person's conduct or that the circumstances exist. A person acts knowingly with respect to a result of the person's conduct when the person is aware that the conduct is reasonably certain to cause the result.

(c) "Reckless" refers to a person who acts recklessly with respect to circumstances surrounding the conduct or the result of the conduct when the person is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under the circumstances as viewed from the accused person's standpoint.

T.C.A. § 39-11-302(a)-(c). "'Bodily injury' includes a cut, abrasion, bruise, burn or disfigurment, and physical pain or temporary illness or impairment of the function of a bodily member, organ, or mental faculty." T.C.A. § 39-11-106(a)(2). Thus, the offense of assault contains only two elements: (1) that the defendant act either intentionally, knowingly, or recklessly; and (2) cause bodily injury to another.

The trial court's charge to the jury included the relevant portions of the statutory definitions of abuse of adult and assault.

As the State concedes, the elements of abuse of an adult do not encompass all of the elements of intentional assault. Intentional assault requires a *mens rea* of "intentionally," while abuse of an adult requires only the *mens rea* of "knowingly." Because of this greater *mens rea* requirement, the elements of intentional assault do not fall completely within the elements of abuse of an adult. Intentional assault cannot be a lesser included offense of abuse of an adult, and the trial court erred in its instruction to the jury.

Looking next to knowing and reckless assault, we conclude that the two elements of knowing and reckless assault are contained within the three elements of abuse of an adult. The element of "physical pain or injury" in abuse of an adult includes the element of "bodily

injury" in knowing or reckless assault. Although the definition of "bodily injury" contains the term "physical pain," abuse of an adult may also be committed by causing "injury." The statute does not define "injury," so we must apply "the natural and ordinary meaning of the words in the statute to give effect to the legislative intent." *State v. Pickett*, 211 S.W.3d 696, 705 (Tenn. 2007). The natural and ordinary meaning of "injury" is "harm or damage that is done or sustained." *Webster's New Universal Unabridged Dictionary*, 983 (1996). Bodily injury is a specific type of harm or damage that may be done or sustained; therefore, the element of injury necessarily includes bodily injury.

The *mens rea* element of abuse of an adult includes the *mens rea* of knowing assault because both offenses require a *mens rea* of "knowingly." Similarly, the *mens rea* element of abuse of an adult subsumes the *mens rea* element of reckless assault. *See State v. Rush*, 50 S.W.3d 424, 430 (Tenn. 2001) ("Because lesser levels of the statutory hierarchy of mental states (intentional, knowing, reckless, and criminally negligent) are included within the greater levels pursuant to Tenn. Code Ann. § 39-11-301(a)(2) ([2012]), an intent element which differs from the intent element of the charged offense only by one of these lower-hierarchy mental states is not actually treated as a differing element."). Because the lower hierarchy mental state of reckless is not a different element than the mental state of knowing, it may be analyzed under part (a) of the *Burns* test. *See id.* at 430 n.7 (because "such elements are not treated as differing, . . . the analysis under part (a) of *Burns* suffices and it is simply not necessary to use part (b)(1)."). Thus, all of the elements of knowing and reckless assault fall within the elements of abuse of an adult under part (a) of the *Burns* test. Because § 40-18-110(f)(1) codified and validated part (a) of the *Burns* test, knowing and reckless assault are therefore lesser included offenses of abuse of an adult under § 40-18-110(f)(1).

Because the trial court erroneously instructed the jury regarding intentional assault, we must determine whether that error was harmless beyond a reasonable doubt. Errors involving instructions to the jury are non-structural constitutional errors that are subject to a harmless error analysis. *State v. Page*, 184 S.W.3d 223, 230 (Tenn. 2006). The State bears the burden of proving beyond a reasonable doubt that the error was harmless. *State v. Noura Jackson*, — S.W.3d —, No. W2009-01709-SC-R11-CD, 2014 WL 4161966, at *28 (Tenn. Aug. 22, 2014) (citing *Chapman v. California*, 386 U.S. 18, 24 (1967); *State v. Rodriguez*, 254 S.W.3d 361, 371 (Tenn. 2008)). An instruction error will be harmless when "it appears beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Rodriguez*, 254 S.W.3d at 371 (citations omitted).

Here, the trial court properly instructed the jury regarding abuse of an adult, and the jury acquitted the defendant of this charge. The proof at trial established that the victim was an adult for the purposes of the abuse of an adult statute because the victim was ninety-one

years old, suffered from advanced-stage Alzheimers, and the defendant moved in with the victim three weeks before the incident to act as his care-giver. Therefore, a reasonable jury could not have concluded that the victim was not an adult for the purposes of the statute. Because the elements of abuse of an adult and knowing assault differ only in the description of the victim, and a reasonable jury could not have found that the victim was not an "adult" for the purpose of the abuse of an adult statute, a finding that the defendant did not act knowingly was implicit in the jury's acquittal. In finding that the defendant did not act knowingly, the jury also must have found that he did not act intentionally because intentionally is a greater culpable mental state than knowingly. Because the jury implicitly rejected the assertion that the defendant acted intentionally or knowingly when it acquitted him of the charge of abuse of an adult, reckless assault remained as the only lesser included offense of which the jury could have convicted the defendant. Therefore, we conclude that the error in instructing the jury, that the defendant acted intentionally, was harmless beyond a reasonable doubt because "it did not contribute to the verdict obtained." *Rodriguez*, 254 S.W.3d at 371. Accordingly, the defendant is not entitled to any relief as to this issue.

## II. Sufficiency of the Evidence

Next, the defendant contends that the evidence is insufficient to support his assault conviction. He bases his argument upon the various inconsistencies in the testimony of Mr. Hudson with regard to his testimony at trial about the events and what he relayed to police at the scene. He further argues that Mr. Hudson's testimony was inconsistent with that of other witness accounts. The defendant contends that Mr. Hudson was motivated to provide an incorrect version of what happened because of Mr. Hudson's own attack on the defendant. The defendant argues that these facts sufficiently impeached Mr. Hudson's credibility such that no rational jury could have found the defendant guilty beyond a reasonable doubt of the offense of assault.

"When the sufficiency of the evidence is challenged, the relevant question is whether, after reviewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. Dorantes*, 331 S.W.3d 370, 379 (2011); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). "[O]n appeal, the State must be afforded the strongest legitimate view of the evidence and all reasonable inferences that may be drawn therefrom." *Dorantes*, 331 S.W.3d at 379 (internal quotation omitted). It is the trier of fact who resolves all questions of witness credibility, the weight and value of the evidence, as well as all factual issues raised by the evidence. *State v. Pappas*, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). Reviewing courts should neither re-weigh the evidence nor substitute their own inferences for those drawn by the jury. *State v. Evans*, 108 S.W.3d 231, 236 (Tenn. 2003).

The trial court's approval of the jury's verdict accredits the State's witnesses and resolves all conflicts in the evidence in the State's favor. *State v. Moats*, 906 S.W.2d 431, 433-34 (Tenn. 1995). "Because a guilty verdict removes the presumption of innocence and replaces it with a presumption of guilt, on appeal a defendant bears the burden of showing why the evidence is insufficient to support the conviction." *State v. Thacker*, 164 S.W.3d 208, 221 (Tenn. 2005). These rules apply whether the verdict is predicated upon direct evidence, circumstantial evidence, or a combination of both. *Dorantes*, 331 S.W.3d at 379. In weighing the sufficiency of the evidence, circumstantial and direct evidence are treated the same, and the State is not required to exclude every reasonable hypothesis other than that of guilt. *Id*. at 381.

The defendant was convicted of assault. Again, under Tennessee Code Annotated section 39-13-301, a person commits assault who intentionally, knowingly, or recklessly causes bodily injury to another. "Bodily injury" includes a "cut, abrasion, bruise, burn or disfigurement, and physical pain or temporary illness or impairment of the function of a bodily member, organ, or mental faculty." T.C.A. § 39-11-106(2).

The defendant's entire sufficiency claim is based upon his contention that Mr. Hudson's testimony was not credible. As has been noted by this court upon multiple occasions, our function is not to reweigh evidence or re-evaluate credibility determinations made by a jury. It is the jury, as the trier of fact, who is to weigh the credibility of witnesses and resolve inconsistencies in testimony. *Evans*, 108 S.W.3d at 236. The witnesses in this case were thoroughly cross-examined by defense counsel, and all the alleged inconsistencies were highlighted to the jury. The inconsistencies between statements, testimony, and interviews were placed squarely before the jury in an attempt to damage the credibility of the witnesses. The jury, based upon its verdict, chose to accredit the State's witnesses despite the various inconsistencies in their individual testimonies. That is the function which the jury serves. We will not disturb those findings on appeal.

Review of the record reveals that the evidence presented, when viewed in the light most favorable to the State, amply supports the verdict reached by the jury. Multiple witnesses, including Mr. Hudson and Ms. Whitney, both observed the defendant and the victim in the backyard. The witnesses saw the defendant hit or push the victim to the ground. As a result, the victim yelled, "[H]elp me." Mr. Hudson and Mr. Proctor arrived at the victim's home minutes later and found the victim lying on the ground and the defendant inside. When questioned about the incident, the defendant acknowledged that he had hit the victim, but he claimed that the victim had started the incident. Both men observed various injuries to the victim, specifically that he was bleeding near the ear and that his face was bruised. Police testimony and photographs confirmed this. That the injuries were not life threatening does not negate the element of "bodily injury." The defendant has simply failed

to carry his burden to establish that the evidence was insufficient to support the conviction.

## CONCLUSION

Based upon the foregoing, the judgment of conviction is affirmed.

_____

JOHN EVERETT WILLIAMS, JUDGE