# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs August 12, 2014

## TINA M. DIXON v. STATE OF TENNESSEE

**Direct Appeal from the Circuit Court for Humphreys County**
**No. 12583      J.S. "Steve" Daniel, Judge**

---

**No. M2013-02173-CCA-R3-PC - Filed January 15, 2015**

---

The petitioner, Tina M. Dixon, filed a petition for post-conviction relief, alleging that her trial counsel were ineffective for failing to request a ruling on a motion for additional findings of fact related to a motion to suppress; failing to raise the issue of the trial judge and the prosecutor's potential conflicts of interest prior to trial; and failing to advise her of a proposed plea agreement. The post-conviction court denied the petition, and the petitioner appeals. Upon review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and D. KELLY THOMAS, JR., JJ., joined.

Andrew E. Mills, Dickson, Tennessee, for the appellant, Tina M. Dixon.

Robert E. Cooper, Jr., Attorney General & Reporter; Meredith DeVault, Senior Counsel; Dan Mitchum Alsobrooks, District Attorney General; and Craig Monsue, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I.  Factual Background

The following facts are from this court's opinion in petitioner's direct appeal: Humphreys County Sheriff's Deputy Wesley Hagler went to the petitioner's residence to serve an attachment order that was issued by the juvenile court. He knocked on the front door, and a man gave him permission to enter. Once inside, he smelled the strong odor of marijuana. Deputy Hagler asked the man for the petitioner's whereabouts, and he was directed to the kitchen. Deputy Hagler entered the kitchen and saw the petitioner sitting at

a table. After the petitioner identified herself, the deputy explained that he was there to serve an attachment order and take her to jail. Deputy Hagler took the petitioner to the porch and then asked about the smell of marijuana. The petitioner denied that marijuana was in or had been smoked in the residence. Detective Tony Ahne came to the porch and asked for permission to search the residence, which the petitioner refused. The officers and the petitioner waited for a patrol car to arrive to transport her to the jail. During the wait, the petitioner indicated that she wanted to speak with Sheriff Chris Davis. Sheriff Davis came to the scene and obtained the petitioner's permission to search the residence. While the officers searched, the petitioner led them to a back bedroom and revealed that drugs were in the nightstand. Therein, officers found a baggie containing powder cocaine, a baggie containing crack cocaine, a baggie containing marijuana, two empty plastic baggies, and some digital scales. The petitioner was arrested, and the case proceeded to trial. The petitioner was convicted of possession of not less than one-half ounce nor more than ten pounds of marijuana with intent to sell or deliver within 1000 feet of a school zone and possession of 0.5 grams or more of cocaine with intent to sell or deliver within 1000 feet of a school zone. The trial court imposed a total effective sentence of twenty years. State v. Tina M. Dixon, No. M2010-02382-CCA-R3-CD, 2012 Tenn. Crim. App. LEXIS 423, at *1, 13-15 (Nashville, June 21, 2012).

Following the petitioner's convictions, she filed a timely notice of appeal, raising the following issues:

> (1) the trial court erred when it denied her motion to suppress because the attachment order upon which she was arrested was unlawfully issued; (2) the trial court erred when it denied her motion to set aside her verdict because she was not properly charged with the crimes for which she was convicted; (3) she was denied due process of law because the presiding trial judge had previously prosecuted her for burglary and felony theft charges; (4) she was denied due process of law because the Assistant District Attorney General who prosecuted her case had previously been her public defender when she was convicted of burglary and felony theft charges; and (5) the trial court erred when it enhanced her sentence.

Id. at *1-2. Upon review, this court affirmed the petitioner's convictions and sentences.

Thereafter, the petitioner filed a petition for post-conviction relief alleging that her trial counsel were ineffective. She asserted that counsel failed to properly address the issue of recusal of the trial judge and the prosecutor because of their prior relationship with the

petitioner. The petitioner asserted that the trial judge, George Sexton, had been an assistant district attorney general in 1991 and had prosecuted her for burglary and theft and that the assistant district attorney general, Lisa Donegan, had been the petitioner's defense counsel in the 1991 cases. The petitioner further asserted that counsel failed to pursue a ruling on a "Motion for Additional Findings of Fact" that was filed after the denial of the petitioner's motion to suppress. Finally, the petitioner complained that trial counsel failed to disclose or discuss a plea offer made by the State.

At the post-conviction hearing, Edie Stainforth, the Chief Deputy Clerk of the Humphreys County Circuit Court, introduced certified judgments showing that the petitioner was convicted of burglary and theft in 1991; the convictions were the result of guilty pleas. Additionally, Stainforth introduced the 2010 judgments of conviction from which the petitioner seeks relief. Stainforth confirmed that Judge Sexton was the assistant district attorney general who prosecuted the petitioner in the 1991 cases and that General Donegan, who represented her in the 1991 cases, was the prosecutor in the 2010 case.

The petitioner's lead trial counsel testified that he was retained to represent the petitioner in 2010. Prior to trial, lead counsel filed a motion to suppress the evidence, alleging that the petitioner was arrested based upon a contempt order that did not have an "oath supporting the attachment." During the suppression hearing, the prosecutor sought to impeach the petitioner by asking whether she was convicted in 1991 of burglary and theft. The trial judge denied the suppression motion and issued a memorandum opinion supporting his ruling. Lead counsel thought the memorandum failed to address all of the issues raised in the petitioner's motion to suppress; accordingly, he filed a motion for additional findings of fact, particularly as it related to the validity of the writ of attachment. Lead counsel did not recall the trial judge's ruling on the motion.

Lead counsel said that prior to trial, the prosecutor conveyed a plea offer to him; however, lead counsel did not recall conveying the offer to the petitioner. Lead counsel did not recall advising the petitioner about the risks and benefits of a trial or of accepting a plea offer. He explained that he "was over confident" that the motion to suppress would be successful.

Lead counsel acknowledged that he knew Judge Sexton was the prosecutor in the 1991 cases and that General Donegan had represented the petitioner. Lead counsel stated that after trial and before the sentencing hearing, he filed a motion challenging the perceived conflict. Lead counsel said that his law partner, with whom he had worked for twenty-five years, may have acted as co-counsel in the case.

On cross-examination, lead counsel said that he had been practicing law since 1956

and that his practice consisted primarily of criminal trial work. The suppression motion was not the only motion or pleading he filed in the petitioner's case. None of the motions were successful.

Lead counsel stated that on February 9, 2009, the State filed a notice of intent to seek enhanced punishment and to impeach the petitioner with her prior convictions. The notice listed six felony convictions in addition to the 1991 burglary and theft convictions. On April 26, 2010, counsel wrote a letter to the trial judge and the prosecutor to bring the potential conflict of interest to their attention in an "informal manner." The letter was introduced as an exhibit. In the letter, counsel stated:

> I may be pursuing an argument to the effect that General Donegan's intense prosecution of the [2010] case is based in large part upon the [petitioner's] prior record, part of which was made by [the petitioner] at the time she was represented by Asst. Public Defender Donegan.
>
> I respectfully request Judge Sexton to consider this matter in light of Rule 10, Canon 3 of the Rules of the Supreme Court.

Co-counsel testified that he had been practicing for thirty-three years and that he assisted lead counsel in representing the petitioner at trial. Co-counsel recalled a plea offer being made, but he could not recall the details of the offer. He did not recall if he discussed the plea offer with the petitioner. He could not recall whether he advised the petitioner of the range of punishment she faced if she went to trial on the charges.

Co-counsel said that when he reviewed the case file, he identified a potential conflict of interest with the trial judge and the prosecutor. Both individuals had been involved in previous convictions that would be used to enhance the petitioner's sentence. Co-counsel raised the conflict in the motion for new trial and on appeal. He thought the issue was also raised as a pretrial motion and was surprised that the record did not contain such a motion. Co-counsel said that neither Judge Sexton nor General Donegan was asked to testify regarding the potential conflict. Post-conviction counsel asked, "Do you feel that prior to or post trial that you ever fully developed that conflict to the point that you could articulate it in a reasonable way?" Co-counsel responded, "I don't know that we – if the record doesn't contain a written motion then I don't think we did."

Co-counsel said that lead counsel alleged in the motion for new trial that the petitioner was threatened with a superseding indictment if she did not accept a plea offer. Co-counsel asserted that lead counsel would have been more familiar with that issue than he was.

-4-

On cross-examination, co-counsel acknowledged that the notice of intent to seek enhanced punishment listed eight prior felony convictions. The petitioner was sentenced to six years as a Range II, multiple offender for possession of marijuana with the intent to sell in a school zone and to twenty years as a Range I, standard offender for possession of cocaine with the intent to sell in a school zone. Co-counsel acknowledged that both were mid-range sentences.

Upon questioning by the post-conviction court, co-counsel stated that he raised the issue of a conflict of interest on appeal and that the petitioner's convictions were affirmed by this court.

The petitioner testified that she was not advised of the range of punishment she was facing on either charge, the risks of going to trial, or the plea offer conveyed by the State. The petitioner said that General Donegan, who prosecuted her in the 2010 case, was her defense attorney in the case in 1991; Judge Sexton, who presided over the 2010 case, was the assistant district attorney general who prosecuted her in the 1991 case. She said that she did not feel that lead counsel and co-counsel "represented [her] adequately with regard to [her] concerns of the petition, the conflict, the plea deal – whether or not it was conveyed to [her] and adequate preparation."

The post-conviction court asked the petitioner to define the factual basis for the claim in her post-conviction petition "that the judge and the prosecutor used privileged and inadmissible information to enhance [her] sentence," which led to the following colloquy:

> [The petitioner:] [B]ecause they had previously been on the cases before that was privileged information because she was my attorney.
>
> [The post-conviction court:] What was privileged information?
>
> [The petitioner:] The case in '91 that she used to enhance my punishment.
>
> [The post-conviction court:] Well, that was tried in this courtroom or you [pled], it was public information, was it [not]?
>
> [The petitioner:] Right. But I felt that it was prejudicial (sic.) between her and myself.

[The post-conviction court:] So that's your sole basis for that position? I'm asking you or is there some other basis for it?

[The petitioner:] To my understanding, yes, sir.

The petitioner introduced affidavits from Judge Sexton and General Donegan, acknowledging their roles in the 1991 and 2010 cases. Additionally, General Donegan acknowledged that prior to the 2010 trial, she conveyed a plea offer to lead counsel.

After the hearing, the post-conviction court denied the petition, finding that

> [t]he evidence presented does not establish that trial counsel's performance fell below the prevailing professional norms. Trial counsel raised the prior relationship of judge and prosecutor prior to sentencing. In addition[,] they raised those issues on direct appeal. Nothing new has been raised in the evidence considered by this court that would support setting aside the jury conviction[s] or concurrent sentences imposed.

On appeal, the petitioner challenges this ruling.

## II. Analysis

To be successful in a claim for post-conviction relief, a petitioner must prove the factual allegations contained in the post-conviction petition by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f). "'Clear and convincing evidence means evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" State v. Holder, 15 S.W.3d 905, 911 (Tenn. Crim. App. 1999) (quoting Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.3 (Tenn. 1992)). Issues regarding the credibility of witnesses, the weight and value to be accorded their testimony, and the factual questions raised by the evidence adduced at trial are to be resolved by the post-conviction court as the trier of fact. See Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997). Therefore, the post-conviction court's findings of fact are entitled to substantial deference on appeal unless the evidence preponderates against those findings. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001).

A claim of ineffective assistance of counsel is a mixed question of law and fact. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). We will review the post-conviction court's findings of fact de novo with a presumption that those findings are correct. See Fields, 40 S.W.3d at 458. However, we will review the post-conviction court's conclusions of law

purely de novo. Id.

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, "the petitioner bears the burden of proving both that counsel's performance was deficient and that the deficiency prejudiced the defense." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). To establish deficient performance, the petitioner must show that counsel's performance was below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). To establish prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. Moreover,

> [b]ecause a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component.

Goad, 938 S.W.2d at 370 (citing Strickland, 466 U.S. at 697).

On appeal, the petitioner contends that her trial counsel were ineffective for failing to request a ruling on the motion for additional findings of fact regarding the motion to suppress; failing to properly raise and address the issue of potential conflicts of interest prior to trial; and for failing to convey a plea offer and discuss the risks of trial with the petitioner. The State asserts that the post-conviction court correctly held that trial counsel were not ineffective. We agree with the State.

First, we note that in the motion for additional findings of fact, trial counsel asked the trial court to "directly address the issue of the validity of the writ of attachment." Although the record does not contain a ruling on this motion, the petitioner contended on direct appeal that the trial court erroneously denied her motion to suppress, asserting that "the attachment order was not lawfully issued because it does not establish or even allege a 'willful disobedience' as required by statute." State v. Tina M. Dixon, No. M2010-02382-CCA-R3-CD, 2012 Tenn. Crim. App. LEXIS 423, at *21 (Nashville, June 21, 2012). This court concluded that the trial court did not err by denying the petitioner's motion, explaining that "even if the attachment were unlawfully issued, the officers gained entry into the house by permission of someone inside the house . . . [and the] owner of the house also gave the officers permission to search the house." Id. at *25. Accordingly, the petitioner has failed

-7-

to establish that her counsel were ineffective in this regard.

Second, we turn to the petitioner's contention that counsel should have pursued the issue of the recusal of the trial judge and the prosecutor in a timely and more thorough manner. The record reveals that trial counsel raised the issue at the motion for new trial and on appeal. This court held that the petitioner "presented no evidence to demonstrate the trial judge's alleged bias or prejudice, and . . . ma[de] no specific allegations of impartiality other than the fact that the trial judge was the prosecuting attorney for one of her prior convictions." Id. at *32. This court additionally stated that the 1991 case occurred nineteen years earlier, that the petitioner pled guilty in 1991, and that there were no facts in dispute about her 1991 conviction. Id. at *34.

This court further stated:

> The case under submission is not one in which the prosecutor "switched sides." . . . [T]here is no evidence that the prosecutor obtained information through her previous representation that had any bearing on these convictions. The [petitioner] even limits her contention to the fact that the prosecutor elicited testimony about the prior convictions when arguing that her sentence should be enhanced. There was, however, no dispute about the facts underlying those convictions, and the convictions were used in combination with others to support that the [petitioner] had a previous history of criminal convictions in addition to those necessary to establish her range.

Id. at *37-38. Accordingly, this court concluded that the petitioner was not entitled to relief on the basis of a conflict of interest. Id. at *38.

The post-conviction court observed that the petitioner presented no further proof that she was prejudiced by the involvement of Judge Sexton and General Donegan. At the hearing, the petitioner acknowledged that her complaint revolved solely around the use of the 1991 convictions to enhance her 2010 sentences. The petitioner's sentences were based upon her prior convictions that were of record, which included several felony convictions in addition to the 1991 convictions. The trial court also applied another enhancement factor, namely that the petitioner failed to comply with sentences involving release into the community. The trial court enhanced the petitioner's sentences to only the midpoint in the range. Tenn. Code Ann. § 40-35-114(8). The petitioner did not introduce any evidence that the prosecutor used privileged information. We conclude that the petitioner has failed to

establish that trial counsel were ineffective in this regard.

Finally, the petitioner complains that her trial counsel failed to inform her of a plea offer made by the State. The proof at the post-conviction hearing established that the State conveyed a plea offer to trial counsel; the record does not reveal, however, the details of the offer. In the petitioner's motion for new trial, lead counsel alleged that the petitioner "was penalized via a superceding indictment for her failure to enter a plea of guilty to the original indictment," which indicated that the petitioner had been advised of, and rejected, the plea offer. Nevertheless, at the post-conviction hearing lead counsel did not recall conveying the offer to the petitioner, co-counsel could recall whether the offer was conveyed, and the petitioner asserted that she was never informed of the offer.

In State v. Garrison, 40 S.W.3d 426, 431 (Tenn. 2000), our supreme court explained that to establish prejudice, a petitioner must ordinarily "show that counsel's errors were so serious as to deprive the petitioner of a fair trial"; however, "[i]n cases where counsel did not convey a plea bargain offer to a defendant, . . . the fair trial standard . . . is not applicable." Instead, "the petitioner must show that there is a reasonable probability that he or she would have accepted the plea had it been properly communicated to him or her." Id.

As we earlier noted, there is no proof in the record regarding the content of the offer. Accordingly, we cannot say that the offer was more favorable than the convictions and sentences the petitioner received. See State v. Joseph Lamont Johnson, Jr., No. M2012-02310-CCA-R3-PC, 2014 Tenn. Crim. App. LEXIS 168, at *24 (Nashville, Feb. 27, 2014). Moreover, the petitioner never testified that she would have accepted the offer if she had known of it. See Clarence Nesbit v. State, No. W2009-02101-CCA-R3-PD, 2013 Tenn. Crim. App. LEXIS 292, at *136 (Jackson, Mar. 28, 2013). Accordingly, we conclude that while counsel may have been deficient in failing to advise the petitioner of the plea offer, the petitioner has not established that she was prejudiced by the deficiency. See Garrison, 40 S.W.3d at 431-32.

### III. Conclusion

In sum, we conclude that the petitioner failed to establish that her trial counsel were ineffective. Therefore, the judgment of the post-conviction court is affirmed.

_____
NORMA McGEE OGLE, JUDGE